SHARON MARIE MIRANDA y OTROS, demandantes y recurridos, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado, y AUTORIDAD DE CARRETERAS, recurrente.

*Números:* RE-93-381       *Resueltos:* 7 de diciembre de 1994
RE-93-356
RE-93-363

*E. Vázquez Otero*, de *Vázquez & Suárez*, abogado de la recu-
rrente Autoridad de Carreteras; *Virgilio Méndez Cuestas*,
abogado de la recurrente Autoridad de Acueductos y Alcan-
tarillados; *Adaljisa Díaz de Collazo*, abogada de los de-
mandantes recurridos; *Pedro A. Delgado Hernández, Pro-
curador General, y Vannessa Ramírez, Procuradora
General Auxiliar*, abogados del demandado Estado Libre
Asociado de Puerto Rico.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del
Tribunal.

## I

La noche de 21 de abril de 1986, Dennis O. Gutiérrez
Cortés, quien manejaba su automóvil a velocidad excesi-
va[1] por el carril izquierdo de la Carretera Estatal Núm.
165 que va de Toa Baja a Dorado, impactó la parte poste-
rior de un camión de arrastre estacionado. Éste, que era
propiedad de la Autoridad de Acueductos y Alcantarillados,

---

[1] La investigación y el análisis del especialista de seguridad y tránsito de la
Policía, Juan M. Arroyo, reveló que el automóvil de Gutiérrez Cortés corría a una
velocidad de sesenta millas por hora (60 m/p/h). Indicó que *no se reflejaron* "huellas
de patinazos, marcas o señal ... para determinar si el conductor intentó alguna acción
evasiva antes de impactar el arrastre".

llevaba una excavadora y carecía de luces traseras encendidas.

La colisión fue devastadora; Gutiérrez Cortés murió decapitado instantáneamente. El vehículo quedó incrustado totalmente debajo de la plataforma hasta el espaldar del asiento trasero desplomado. El lugar estaba oscuro, ya que los postes de alumbrado público no funcionaban.

A la fecha del accidente, Gutiérrez Cortés tenía treinta y cuatro (34) años, estaba casado, trabajaba como Gerente de Producción en Emulex del Caribe, Inc. y devengaba un salario anual de treinta y cuatro mil dólares ($34,000). Además, era padre de dos (2) hijos menores de edad.

El 15 de abril de 1987 su esposa Sharon Marie Miranda, por sí y en representación de sus hijos, demandó en daños y perjuicios a la Autoridad de Acueductos y Alcantarillados, al Estado Libre Asociado de Puerto Rico y a sus aseguradoras. Adujo que la Autoridad de Acueductos y Alcantarillados fue negligente al estacionar el camión sin las luces, y el Estado al no mantener el alumbrado en condiciones funcionales. Ambos negaron responsabilidad y alegaron afirmativamente que el accidente se debió exclusivamente a la negligencia de Gutiérrez Cortés al conducir a una velocidad exagerada. Posteriormente, incoaron recíprocamente sendas demandas contra coparte.

El 6 de abril de 1990 el Estado formuló una demanda de tercero contra el Municipio de Toa Baja, la Autoridad de Carreteras de Puerto Rico y sus aseguradoras por no proveer alumbrado en la carretera.[2] El 20 de agosto los demandantes Miranda *et al.* enmendaron su demanda para incluir a esos terceros y, posteriormente, a sus aseguradoras. Todos negaron responsabilidad.

El 27 de abril de 1993 el Tribunal Superior, Sala de Bayamón (Hon. Benigno Dapena Yordán, Juez), declaró

---

[2] Con motivo del ensanche de la Carretera Núm. 165, la Autoridad de Carreteras había removido los postes que, en ese momento, no funcionaban. A la fecha del accidente no habían sido instalados.

con lugar la demanda y condenó *solidariamente* a la Autoridad de Acueductos y Alcantarillados, a la Autoridad de Carreteras y a sus aseguradoras a compensar a los demandantes Miranda *et al.*(³) *Dictaminó que la indemnización que había de pagarse sería reducida en un cincuenta por ciento (50%) por la negligencia concurrente de Gutiérrez Cortés.* Declaró *sin* lugar la demanda enmendada contra el Municipio de Toa Baja y la demanda de tercero formulada por el Estado, a quien condenó a pagar las costas por haber traído al pleito al Municipio. Finalmente, declaró *con lugar* la demanda de tercero del Estado contra la Autoridad de Carreteras, más las costas.

No conformes, la Autoridad de Acueductos y Alcantarillados, la Autoridad de Carreteras y los demandantes Miranda *et al.* pidieron una revisión.(⁴) No así el Estado; éste compareció en apelación con el único propósito de sostener

---

(³) Ordenó el pago de doscientos mil dólares ($200,000) por lucro cesante; tres mil trescientos cincuenta dólares ($3,350) por gastos de enterramiento; setenta y cinco mil dólares ($75,000) por daños mentales, angustias y sufrimientos de la esposa Sharon Marie; cuarenta mil dólares ($40,000) por daños psicológicos, angustias y sufrimientos del hijo Shaján, y treinta mil dólares ($30,000) por angustias y sufrimientos del menor Dennis Fernando.

(⁴) Los *demandantes Miranda et al.* argumentaron:

"Erró el tribunal de instancia al no imponer honorarios de abogado e intereses por temeridad contra la demandada Autoridad de Acueductos y Alcantarillados y su compañía aseguradora.

"Erró el tribunal de instancia al reducir a la mitad las cuantías adjudicadas a los demandantes en base al porcentaje de negligencia que determinó correspondía al fenecido como cocausante del daño."

Por su parte, la *Autoridad de Carreteras* alegó:

"A. PORQUE LA CAUSA PRÓXIMA, RECIENTE Y PRODUCTORA DEL DAÑO FUE LA VELOCIDAD EXAGERADA A QUE MANEJABA SU VEHÍCULO GUTIÉRREZ UNIDO A LA PRESENCIA DEL VEHÍCULO DE ACUEDUCTOS SIN LUCES TRASERAS, Y NO LA AUSENCIA DE ILUMINACIÓN A MÁS DE QUE CARRETERAS NO TENÍA OBLIGACIÓN DE PROVEER LA MISMA.

"B. PORQUE SIENDO MAYOR LA NEGLIGENCIA DE GUTIÉRREZ QUE CUALQUIER NEGLIGENCIA QUE PUDIESE SERLE IMPUESTA A CARRETERAS, LA NEGLIGENCIA DE AQUÉL ABSORBIÓ LA DE ÉSTA.

"C. PORQUE LAS COMPENSACIONES SON EXAGERADAS Y NO GUARDAN PROPORCIÓN CON LOS DAÑOS SUFRIDOS Y NO SE HICIERON LAS DEDUCCIONES DE LEY.

"D. PORQUE EL TRIBUNAL SE NEGÓ A NIVELAR LAS CULPAS, A PESAR DE HABÉRSELE REQUERIDO." Alegato de la recurrente Autoridad de Carreteras, pág. 5.

Finalmente, *la Autoridad de Acueductos* y Alcantarillados señaló:

la reducción en un cincuenta por ciento (50%) de las cuantías de daños concedidas a los recurrentes Miranda *et al.*

Consolidamos y acordamos revisar.

## II

■ De entrada, en este caso están presentes los elementos constitutivos de una causa de acción bajo el Art. 1802 de nuestro Código Civil, 31 L.P.R.A. sec. 5141, a saber, un daño; su relación causal con la acción u omisión del demandado, mediando culpa o negligencia. *Ramos Escobales v. García, González*, 134 D.P.R. 969 (1993); *Rivera Jiménez v. Garrido & Co., Inc.*, 134 D.P.R. 840 (1993); *Defendini Collazo et al. v. E.L.A., Cotto*, 134 D.P.R. 28 (1993); *J.A.D.M. v. Centro Com. Plaza Carolina*, 132 D.P.R. 785 (1993); *Torres Maldonado v. J.C. Penney Co.*, 130 D.P.R. 546 (1992); *García Pagán v. Shiley Caribbean, etc.*, 122 D.P.R. 193 (1988); *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762 (1987); *Soc. Gananciales v. G. Padín Co., Inc.*, 117 D.P.R. 94 (1986).

■ "El estándar de conducta para determinar si un acto es o no negligente es la diligencia exigible a la figura mítica del hombre prudente y razonable. *Hernández v. La Capital*, 81 D.P.R. 1031, 1038 (1960). ... '[L]a culpa o negligencia es la falta de debido cuidado, que a la vez consiste, esencialmente en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. *Ramos v. Carlo*, supra, a la pág. 358.'" *Oca-*

---

"A. PORQUE LA CAUSA PRÓXIMA, EFICIENTE Y PRODUCTORA DEL CASO FUE LA VELOCIDAD EXAGERADA A QUE MANEJABA SU VEHÍCULO GUTIÉRREZ.

"B. PORQUE SIENDO MAYOR LA NEGLIGENCIA DE GUTIÉRREZ QUE CUALQUIER NEGLIGENCIA QUE PUDIESE SERLE IMPUESTA A ACUEDUCTOS, LA NEGLIGENCIA DE GUTIÉRREZ ABSORBIÓ LA NEGLIGENCIA DE ACUEDUCTOS, SI ALGUNA." Solicitud de revisión de 3 de agosto de 1993, Pág. 3.

*sio Juarbe v. Eastern Airlines, Inc.*, 125 D.P.R. 410, 418 (1990).

◼ Por otro lado,

[e]n nuestra jurisdicción rige la doctrina de causalidad adecuada. *Jiménez v. Pelegrina Espinet*, 112 D.P.R. 700 (1982); *Soc. de Gananciales v. Jerónimo Corp.*, 103 D.P.R. 127 (1974). De conformidad con esta teoría no es causa toda condición sin la cual no se hubiese producido el resultado, sino aquella que ordinariamente lo produce según la experiencia general. *Arroyo López v. E.L.A.*, 126 D.P.R. 682 (1990); *Cárdenas Maxán v. Rodríguez Rodríguez*, 125 D.P.R. 702 (1990); H. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. I, pág. 696 *et seq.* Al amparo de esta doctrina la cuestión se reduce a determinar si la ocurrencia del daño era de esperarse en el curso normal de los acontecimientos o si, por el contrario, queda fuera de ese posible cálculo. J. Santos Briz, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1984, T. XXIV, pág. 267. Según explicáramos en *Arroyo López v. E.L.A.*, supra, pág. 690:

"... para que exista relación causal la acción u omisión tiene que ser idónea para producir el efecto operado; tiene que determinarlo normalmente. A fin de establecer esa vinculación de causa y efecto entre esos dos (2) sucesos, tenemos que realizar un análisis retrospectivo de posibilidad. En vista de ello, no es suficiente que un hecho aparezca como condición de un evento si regularmente no trae aparejado ese resultado. La causalidad está necesariamente limitada por el ámbito de la obligación, pues es infinita la serie de daños que, en interminable encadenamiento, pueden derivarse del incumplimiento de una obligación. *Estremera v. Inmobiliaria Rac., Inc.*, 109 D.P.R. 852, 857 (1980)."

El propósito de utilizar criterios como el de causa adecuada o causa próxima es limitar la cadena de responsabilidad y evitar que se extienda a límites absurdos. Brau del Toro, *op. cit.*, págs. 709–710. Si se ha incurrido o no en responsabilidad civil resultante de una omisión hay que considerar dos (2) factores: la existencia o inexistencia de un deber jurídico de actuar por el alegado causante del daño cuyo incumplimiento constituye un acto antijurídico, y si de haberse realizado el acto omitido se hubiera evitado el daño. *Soc. Gananciales v. G. Padín Co., Inc.*, 117 D.P.R. 94 (1986). (Énfasis suprimido.) *Rivera Jiménez v. Garrido & Co., Inc.*, supra, págs. 852–853.

## III

■ Por su aplicación multidimensional en este caso, es menester recordar que la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 141 de 20 de julio de 1960, según enmendada, 9 L.P.R.A. sec. 301 *et seq.*, exige que los conductores utilicen las luces delanteras y posteriores de los vehículos y, en algunos casos, lleven reflectores para facilitar la visibilidad nocturna de sus dimensiones. Este deber legal cobra mayor trascendencia cuando un vehículo se estaciona de noche en la vía pública.

■ Además, consagra la regla básica de la "velocidad relativa". Recoge el principio elemental de que un conductor debe regular con sumo cuidado la velocidad del vehículo y tomar en cuenta el volumen del tránsito, las características de la vía y sus usos y condiciones. Ningún conductor debe manejar a una velocidad mayor a la que le permita dominar el vehículo y reducirla o parar cuando sea necesario, para así evitar accidentes.

Este principio adquiere mayor importancia cuando se acerca a una intersección, a la cima de una pendiente, en carreteras estrechas o cuando existan peligros especiales respecto a los peatones o por razón de las condiciones del tiempo o de la vía. 9 L.P.R.A. sec. 841(a); *Vda. de Vila v. Guerra Mondragón*, 107 D.P.R. 418 (1978). Examinemos, pues, la conducta de los protagonistas principales y su negligencia.

Coincidimos con el ilustrado foro de instancia en cuanto a que Gutiérrez Cortés fue negligente en un cincuenta por ciento (50%) al manejar a exceso de velocidad y que ello fue una de las causas que provocaron su muerte.

■ Al respecto, la prueba documental demuestra que debido a la velocidad que iba, Gutiérrez Cortés no tuvo la oportunidad de desviarse del carril y evitar la colisión; además, las fotografías, sin margen de duda, revelan los graves y sustanciales daños a su automóvil y lo aparatoso del

accidente. Notamos, además, que al ocurrir el accidente, llevaba encendidas las luces delanteras que exige la ley, "capaces de alumbrar hacia el frente la carretera por un trecho de 500 pies", 9 L.P.R.A. sec. 1272(a)(1), lo cual tiende a evidenciar ese alto grado de negligencia al manejar a exceso de velocidad. Vale recordar que "[e]l hecho de que por ley se señale un máximo de velocidad para determinada zona no significa que esté autorizado un conductor a ir a ese máximo todo el tiempo". *Vda. de Vila v. Guerra Mondragón*, supra, pág. 424.

Por otro lado, se admite que la carretera no tenía funcionando el sistema de alumbrado público. Aunque el tribunal sentenciador concluyó que, en teoría, el Art. 404 del Código Político, 3 L.P.R.A. sec. 422, convertía al Estado en responsable, lo relevó de esa responsabilidad debido a que había delegado su instalación a la Autoridad de Carreteras. Si bien las partes estipularon que las Carreteras P.R. 165, P.R. 865 y P.R. 22 *son estatales, la Certificación Núm. 511-88 del Departamento de Transportación y Obras Públicas de 20 de septiembre de 1988, reveló que la Carretera Núm. 165, donde ocurrió el accidente, "estaba bajo la jurisdicción y supervisión de la Autoridad de Carreteras"*. Por disposición legal, "la Autoridad puede convenir con el Secretario del Departamento de Transportación y Obras Públicas para estudiar, diseñar, construir, reparar y *mantener las facilidades de tránsito*. Esta es la verdadera razón por la cual la Autoridad puede hacer mejoras y reconstrucciones en carreteras estatales". (Énfasis suplido.) 9 L.P.R.A. sec. 2006. Véase *Rivera Jiménez v. Garrido & Co.*, supra, pág. ___.

En estas circunstancias, el *Estado* no tenía el deber primario y directo de brindar el cuidado y mantenimiento requeridos, ya que la vía no estaba bajo su control y jurisdicción. Por tal razón, el tribunal de instancia acertadamente resolvió que, "[a]l aplicar el Art. 404 del Código Político y su jurisprudencia interpretativa y al delegar el

Estado en su agencia Autoridad de Carreteras para iluminar la carretera donde ocurrió este accidente, es procedente la demanda de tercero del Estado contra Carreteras". Opinión y sentencia, pág. 12.

Ciertamente, la Autoridad de Carreteras tenía el deber legal de brindar iluminación dentro de un período de tiempo razonable, una vez el municipio *solicitó su instalación y consintió pagar el consumo de electricidad*. La prueba demostró que casi tres (3) años antes del accidente, con carácter urgente, la Asamblea Municipal de Toa Baja así lo había pedido mediante la Resolución Núm. 14 de 15 de septiembre de 1983.([5])

La Autoridad de Carreteras preparó los planos y llevó a cabo la subasta. Terminada la reconstrucción de la vía, la reinstalación del alumbrado fue *aceptada* el 14 de mayo de 1987 por la Oficina Regional de Arecibo del Departamento de Transportación y Obras Públicas. Esto es, aproximadamente *un (1) año después del accidente y cuatro (4) años desde que la Asamblea Municipal había solicitado, con ur-*

---

([5]) Disponía:

"POR CUANTO:

"La Carretera 165 de Toa Baja es una de las Carreteras principales de nuestro Municipio.

"POR CUANTO:

"La Carretera 165 consta de 4 carriles los cuales invitan a nuestros ciudadanos *a usar al máximo de velocidad.*

"POR CUANTO:

"La Carretera 165 se encuentra desprovista del alumbrado necesario convirtiéndose en una seria amenaza a la seguridad de los transeúntes tanto vehiculares como peatonales.

"POR CUANTO:

"*Es urgente y necesario que se proceda a la mayor brevedad a reinstalar los postes y el alumbrado que fueron removidos durante el ensanche de la carretera 165 hasta la entrada del Pueblo de Toa Baja.*

"POR TANTO:

"RESUÉLVASE POR LA ASAMBLEA MUNICIPAL DE TOA BAJA COMO POR LA PRESENTE SE RESUELVE:

"Sección 1ra: Solicitar del Departamento de Transportación y Obras Públicas que *reinstalen el alumbrado público* durante el ensanche de la Carretera 165 hasta la entrada al pueblo de Toa Baja.

"Sección 2da: Esta Resolución *por ser urgente y necesaria entrará en vigor inmediatamente de su aprobación.*" (Énfasis suplido.) Resolución Núm. 14, Serie 1983–1984, Asamblea Municipal de Toa Baja, pág. 1.

*gencia, la reinstalación de los postes y del alumbrado público.* Ello derrota la contención de la Autoridad de Carreteras.

◼ Es norma reiterada que " '[l]a culpa consiste en la omisión de la diligencia exigible, mediante cuyo empleo podría haberse evitado el resultado dañoso.' C. Rogel Vide, *La Responsabilidad Civil Extracontractual*, Ed. Civitas, 1976, pág. 90. La diligencia exigible es la que cabe esperar del ser humano medio, el buen *paterfamilias. Si el daño es previsible por éste hay responsabilidad. Si no es previsible estamos generalmente en presencia de un caso fortuito.* Rogel Vide, *op. cit.*, pág. 91". (Énfasis suplido.) *Jiménez v. Pelegrina Espinet*, 112 D.P.R. 700 (1982).

En resumen, ante este peculiar trasfondo fáctico, con vista a que el Estado delegó en la Autoridad de Carreteras la instalación del alumbrado, al pedido de la Asamblea Municipal y la disponibilidad de fondos para satisfacer el consumo eléctrico, es obvio que la Autoridad de Carreteras incurrió en una tardanza irrazonable y no justificada. La falta de iluminación, a la fecha del accidente, fue una de las causas del accidente. Ratificamos su negligencia.[6]

## IV

También coincidimos con el foro sentenciador al imponerle responsabilidad a la Autoridad de Acueductos y Alcantarillados.

◼ La Ley de Vehículos y Tránsito de Puerto Rico requiere que los arrastres del tipo de plataforma lleven, en la estructura permanente del vehículo y de forma tal que indiquen su ancho, dos (2) luces color ámbar al frente y dos (2) rojas en la parte posterior. Sec. 6-205 de la Ley de Ve-

---

[6] En su sentencia y parte dispositiva, el tribunal de instancia no hizo mención alguna a las demandas de coparte incoadas entre sí por el Estado y la Autoridad de Acueductos y Alcantarillados. Es obvio que sus pronunciamientos, en estos extremos confirmados, tornaron esas demandas en académicas.

hículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1275. También obliga a llevar dos (2) reflectores rojos a cada lado para indicar el ancho del vehículo; pueden instalarse como parte de los faroles posteriores o por separado. Además, exige dos (2) reflectores a cada lado para indicar el largo total del vehículo; al frente, color ámbar; atrás, rojo. Sec. 6-207 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1277.

Por otro lado, ninguna persona puede estacionar de noche su vehículo en una vía pública si ésta carece de alumbrado público y el vehículo no tuviese encendida sus luces de estacionamiento, luces posteriores y cualesquiera otras que pueda exigir el Secretario de Transportación y Obras Públicas por ley o por reglamento. 9 L.P.R.A. sec. 1021.

La prueba refleja incontrovertiblemente que el camión de arrastre de la Autoridad de Acueductos y Alcantarillados estaba *estacionado* en la vía de rodaje *durante la noche* y desprovisto de las luces traseras, exigidas por la ley. Incumplir con este precepto legal constituyó un acto negligente causante, en parte, del accidente; tiene que responder. *Velázquez v. Ponce Asphalt*, 113 D.P.R. 39, 46 (1982). Además, de las fotografías presentadas en evidencia notamos que el camión de arrastre estaba totalmente enlodado, *incluso sus reflectores*, de tierra y material típico relacionado con las construcciones para las cuales de ordinario se utilizan las excavadoras.

En síntesis, confirmamos la sentencia del foro de instancia en cuanto impuso responsabilidad *solidaria* a los codemandados Autoridad de Carreteras, Autoridad de Acueductos y Alcantarillados y sus aseguradoras en un cincuenta por ciento (50%);[7] de igual forma la indemnización a pa-

---

(7) Aunque en la parte dispositiva de su sentencia el foro de instancia no le impuso responsabilidad al Estado, en sus conclusiones de derecho dispuso que el Estado era solidariamente responsable por el accidente. Ciertamente, estos dictámenes son contradictorios.

garse será reducida en un cincuenta por ciento (50%), por la negligencia concurrente de Gutiérrez. Avalamos la desestimación de la demanda de tercero y la demanda enmendada contra el Municipio de Toa Baja, que condena al Estado al pago de las costas.

## V

Aclarados estos extremos, examinemos si el tribunal de instancia incidió al reducir la compensación concedida a los demandantes en la proporción de la negligencia del occiso.[8]

En lo pertinente, el Art. 1802 del Código Civil, *supra*, proclama que "[l]a imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización".

Los demandantes recurridos Miranda *et al.* invocan a *Torres Pérez v. Medina Torres*, 113 D.P.R. 72, 79 (1982), como precedente dispositivo de esta controversia. *Revisitémoslo*. Se recordará que allí se cuestionó si el grado de negligencia de uno de los progenitores se aplicaba para reducir la compensación por daños *a su hija menor de edad*

---

No puede, por un lado, concluirse que el Estado es solidariamente responsable y, por otro, resolver que, por haber delegado el control de la vía a la Autoridad de Carreteras, no responde. La solidaridad en materia extracontractual es una condición jurídica dimanante de una previa determinación de cocausalidad. Si el Estado no fue cocausante, tampoco puede ser solidariamente responsable.

[8] Como indicamos, el Estado no apeló. Resulta inexplicable, pues, la parte dispositiva de la sentencia que declaró con lugar la demanda de tercero del Estado contra la Autoridad de Carreteras, pues contra aquél no se dictó sentencia. Hemos visto que el Estado no tenía el deber legal de dar mantenimiento a la vía pública en cuestión, pues lo había delegado a la Autoridad de Carreteras y es ésta quien responde frente a los demandantes. La Autoridad de Carreteras argumenta que estas compensaciones son exageradas.

De ordinario, el tribunal de instancia está en mejor posición para evaluar los elementos visibles e intangibles que nutren toda determinación de daños. Sin embargo, esta norma cede cuando las sumas concedidas son exageradamente altas o ridículamente bajas. *Sanabria v. E.L.A.*, 132 D.P.R. 769 (1993); *Urrutia v. A.A.A.*, 103 D.P.R. 643, 647 (1975).

Consideramos razonables, justas y con apoyo en la prueba la estimación del ilustrado foro sentenciador sobre daños; no la alteraremos.

y a su cónyuge, quien no había contribuido a la ocurrencia del accidente. Resolvimos que "[l]a negligencia de la madre no puede, sin embargo, ser imputada a la niña, ni al padre de ésta y no procedería, por tanto, reducirse su indemnización en proporción a la imprudencia concurrente de la madre". Íd., pág. 73.

Al así resolver, el Tribunal revocó expresamente, en el esc. 1, la normativa siguiente de *Quintana Martínez v. Valentín*, 99 D.P.R. 255 (1970):

El derecho del padre y de los hermanos del niño fallecido a reclamar indemnización contra los demandados surge exactamente del mismo acontecimiento que daba también derecho a la madre a reclamar. Así, al determinar la Sala sentenciadora que la negligencia de los demandados fue responsable del accidente en sólo un 60%, los demandados no vienen obligados a responder por dicho accidente en cantidad alguna en exceso del 60% de los daños determinados, conforme al criterio reparador del Art. 1802 del Código Civil, ed. 1930. La base para aplicar la norma de imprudencia concurrente es el conjunto de daños producidos por un accidente mediante la culpa o negligencia del Art. 1802, restándole a dicho conjunto de daños aquello que no es imputable al actor cuando la culpa no es sólo del actor, y se divide entre éste y la parte reclamante. La base no es la parte alícuota que pueda corresponder, en ese conjunto de daños, a distintos demandantes con derecho a reclamar. Es sobre el daño causado en un accidente, no sobre tal parte alícuota, que opera la norma de la concurrencia de culpas.

Posteriormente, en *Molina, Caro v. Dávila*, 121 D.P.R. 362 (1988), el Tribunal en votación de cuatro (4) a tres (3), aplicó *Torres Pérez v. Medina Torres*, supra, y concluyó que la madre codemandante de una joven de diecisiete (17) años, *víctima y cocausante de un accidente*, estaba en una situación similar a la de la madre de la niñita, *inimputable* en *Torres Pérez v. Medina Torres*, supra, por lo que su compensación tampoco podía reducirse.

En *Molina, Caro v. Dávila*, supra, la opinión mayoritaria no diferenció entre la situación cuando un cocausante y víctima de un accidente es imputable y aquella

cuando no lo es. En la primera, quienes se benefician de la compensación, incluso la víctima, tienen que reducir de la compensación que reciban la proporción de la negligencia imputada a la víctima. En la segunda, no se le imputa negligencia a la víctima directa, por lo que la compensación a sus padres o causahabientes no se afecta.

Sin embargo, la opinión concurrente y disidente del Juez Asociado Señor Rebollo López, a la cual se unieron la Juez Asociada Señora Naveira de Rodón y quien suscribe, examinó esa crucial diferencia y, a base de una documentada exposición doctrinaria, sostuvo que procedía la reducción. Se dijo:

> "[S]i bien ... se trata de una acción personal del causahabiente, esto no significa que esta acción sea totalmente independiente de la víctima directa. La acción es personal en el sentido de que ella no figura en el patrimonio dejado por la víctima; que no es a título de sucesor que el causahabiente dispone del derecho de obtener la indemnización de un daño que repercute en su patrimonio. Pero, desde otro punto de vista, dicho derecho 'permanece atado al difunto, en el sentido de que los valores de los que los suyos se ven privados son los que se ligaban a su existencia, y que habrían recibido de él, no de su propio fondo'. Así, los daños son personales, pero existe una independencia con los que ha sufrido la víctima directa.
> Es porque la víctima ha sufrido un perjuicio que el causahabiente sufre también otro perjuicio. Si aquélla no hubiera perecido, de nada habría podido quejarse este último." (Énfasis en el original.) J. Bidart Hernández, Sujetos de la acción de responsabilidad extracontractual, Chile, Ed. Jurídica de Chile, 1985, pág. 104, citado en la opinión concurrente y disidente en Molina, Caro v. Dávila, supra, págs. 407–408.

Hoy con el beneficio de esa opinión concurrente y disidente decidimos que, en justicia, no debe permitirse que los parientes de un damnificado invoquen la solidaridad familiar para ser compensados por el autor del accidente y, a su vez, nieguen aceptar las consecuencias resultantes de la negligencia de la víctima.

Santos Briz consigna que "a los terceros titulares de indemnizaciones se les podrá oponer la culpa concurrente del

directamente perjudicado, y les afecta también la obligación de disminuir los daños". J. Santos Briz, *Derecho de Daños*, Madrid, Ed. Rev. Der. Privado, 1963, pág. 280.

Atinadamente, la Autoridad de Carreteras nos cita a Tamayo Jaramillo, quien concluye que "[s]i los demandantes, por ejemplo, son los herederos del difunto, pero reclaman el perjuicio personal que sufrieron, el demandado también podrá oponer a ellos la culpa de la víctima ... *todo el que como heredero a título universal ejerza su acción personal, tendrá que someterse a sufrir la influencia de la culpa de la víctima directa del daño*". (Énfasis suplido.) J. Tamayo Jaramillo, *De la Responsabilidad Civil*, 2da ed., Bogotá, Ed. Temis, 1986, T. I, pág. 261.

Brau del Toro nos expone:

> *La negligencia concurrente de una persona* que resulta lesionada o muerta en un accidente *es imputable a sus causahabientes* que reclamen, ya por la acción patrimonial hereditaria del occiso o *ya por su acción personal*, por daños propios derivados de la muerte o de las lesiones sufridas por el perjudicado. Esta norma deriva del principio que dicta que los herederos y otros causahabientes se colocan en la posición de su causante. (Énfasis suplido.) Brau del Toro, *op. cit.*, pág. 415.

En consecuencia, revocamos la interpretación y aplicación errónea que se le dio a esta doctrina en *Molina, Caro v. Dávila*, supra, y reinstalamos la expuesta en *Quintana Martínez v. Valentín*, supra. La norma revocada trastoca el precepto legal del Art. 1802 del Código Civil, *supra*, que permite reducir la compensación de un demandante en la proporción de la negligencia que se le imputa. Como corolario, en casos en los cuales los codemandantes sean los causahabientes, parientes o terceros de un perjudicado, que incurrió en negligencia, sus compensaciones se reducirán en esa proporción.

Este cambio doctrinario jurisprudencial aplicará a todo caso en trámite ante los tribunales y en los cuales aún no haya recaído *sentencia final y firme*. Compárense: *Riley v.*

*Rodríguez de Pacheco*, supra; *Monrozeau v. Srio. de Justicia*, 121 D.P.R. 885, 889 (1988).

## VI

■ Tiene razón la recurrente, Autoridad de Carreteras, en que el tribunal de instancia incidió al no hacer las deducciones de la Ley de Protección Social por Accidentes de Automóviles (en adelante Ley de la A.C.A.A.), Ley Núm. 138 de 26 de junio de 1968 (9 L.P.R.A. sec. 2051 *et seq.*). Dicho estatuto provee una deducción de diez mil dólares ($10,000) al "dependiente primario" en caso de *muerte* en un accidente automovilístico. A tono con su definición legal, aquí "dependiente primario" es Sharon M. Miranda, viuda de la víctima. 9 L.P.R.A. sec. 2054(4)(h)(c). Además, de la compensación a su hijo Shajan (de nueve (9) años a la fecha del accidente) debe deducirse cuatro mil dólares ($4,000). Al otro hijo Dennis Fernando, de cuatro (4) años al momento del accidente, se le deducirán cinco mil dólares ($5,000). 9 L.P.R.A. sec. 2054(4)(a)(3).

■ La Ley de la A.C.A.A. también exige la reducción de mil dólares ($1,000) para gastos funerales —9 L.P.R.A. sec. 2054(4)(a)— y de dos mil dólares ($2,000) por razón de la compensación por lucro cesante. 9 L.P.R.A. sec. 2058. Por último, a las indemnizaciones concedidas a Sharon e hijos en concepto de "daños morales" le restarán el importe de los beneficios que hayan recibido de la Administración de Compensaciones por Accidentes de Automóviles, excluyendo las deducciones anteriores. *Zeno Molina v. Vázquez Rosario*, 106 D.P.R. 324, 330 (1977).[9] 9 L.P.R.A. sec.

---

[9] Anteriormente expresamos que "los daños morales deben ser de evidente repercusión patrimonial, en cuyo caso son indefectiblemente resarcibles como si se tratara de daños materiales, pero esto no quiere decir que los daños morales, *strictu sensus*, aquéllos que pertenecen al mundo sensible del ser humano, dejen de compensarse siempre y cuando se pruebe cómo dichos daños han afectado la salud, el bienestar, la felicidad del damnificado: *Hernández* v. *Fournier*, 80 D.P.R. 93 (Saldaña) (1957) cita precisa a la pág. 103, en el cual resolvimos que 'en cuanto a los daños

2058(3)(d). Todas estas deducciones se harán conforme lo establecido por nuestra jurisprudencia. *Canales Velázquez v. Rosario Quiles*, 107 D.P.R. 757, 774–775 (1978).

## VII

Finalmente, los demandantes Miranda *et al.* solicitan los honorarios de abogado e intereses por temeridad contra la Autoridad de Acueductos y Alcantarillados. Coincidimos.

■ En su contestación, la Autoridad de Acueductos y Alcantarillados *negó en términos generales* la ocurrencia del accidente, la fecha, la hora, el lugar, la muerte por decapitación del occiso y su responsabilidad por carecer de luces el camión. Cuando hizo esa alegación responsiva había transcurrido un (1) año y cuatro (4) meses del accidente, por lo que es razonable concluir que la veracidad de esos hechos había sido investigada y verificada. Los abogados no deben "negar hechos que les constan o pueden verificarse fácilmente y que negar las alegaciones indiscriminadamente, aun con la muletilla de 'por falta de información', es una práctica indeseable que los abogados deben tener especial cuidado en evitar". (Énfasis suprimido.) *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 720 (1987).

La Autoridad de Acueductos y Alcantarillados tardó nueve (9) meses en contestar el interrogatorio sometido. Los demandantes Miranda *et al.* tuvieron que presentar tres (3) mociones para solicitar al tribunal que ordenara la contestación. En dos (2) ocasiones, la Autoridad de Acueductos y Alcantarillados ignoró las órdenes judiciales. Ante ese desinterés y renuencia al descubrimiento, el tribunal eliminó sus alegaciones responsivas a tenor con la Regla 34.2(b)(3) de Procedimiento Civil, 32 L.P.R.A. Ap. III. Pos-

---

morales es imprescindible probar sufrimientos y angustias morales profundas y no bastaría una pena pasajera como base de la acción' ". *Ramos Rivera v. E.L.A.*, 90 D.P.R. 828, 831 (1964)."[E]stán inclu[i]dos en el concepto de angustias mentales ...." *Consejo de Titulares v. C.R.U.V.*, 132 D.P.R. 707, 730 esc. 12 (1993), citando a *Reyes v. Aponte*, 60 D.P.R. 890, 896 (1942).

teriormente, a su solicitud, reconsideró y sustituyó esa sanción por unas económicas conforme la Regla 44.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III; le amonestó "contra futuros incumplimientos y dilaciones en el trámite".

Además, la Autoridad de Acueductos y Alcantarillados se negó a entregar los informes de sus dos (2) peritos. Hubo que recurrir a otra orden judicial. Aún así, no los entregó. Ante esa negativa, los demandantes Miranda *et al.* presentaron una segunda moción para solicitar una orden al efecto. El tribunal la emitió para apercibir a la Autoridad de Acueductos y Alcantarillados que su incumplimiento conllevaría sanciones económicas. Luego de toda esta innecesaria demora, los entregó.

Pero hay más. La Autoridad de Acueductos y Alcantarillados obstaculizó la toma de deposición del chofer del camión accidentado, Raúl Cancel Pérez. Aunque compareció, ordenó al deponente a que no contestara las preguntas de los demandantes Miranda *et al.*, a base de que había presentado una oposición a dicha toma de deposición y ésta no había sido resuelta. Frente a esta actuación, se levantó un acta y, posteriormente, los demandantes Miranda *et al.* tuvieron que presentar dos (2) mociones para requerir la presencia del testigo a la deposición. Sólo después de ser denegada la oposición se efectuó la deposición.

Reafirmamos que "[l]a determinación sobre si una parte ha procedido con temeridad o no descansa en la sana discreción del tribunal". *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339, 349 (1989). "La partida de honorarios de abogado concedida no variará en apelación, a menos que la misma sea excesiva, exigua o constituya un abuso de discreción." Íd., pág. 350.

Además, su propósito fundamental es " 'penalizar o sancionar' a aquellas partes que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obligan a otra parte a asumir y sufrir las molestias, gastos, trabajo e inconsecuencia de

un litigio innecesario". (Énfasis suprimido.) *Corpak, Art Printing v. Ramallo Brothers*, 125 D.P.R. 724, 737 (1990). Véase *Fernández v. San Juan Cement Co., Inc.*, supra, pág. 718. Mediante este mecanismo, los tribunales protegen a los litigantes honestos de imposiciones, dilaciones y gastos innecesarios. E. Bernier, *El derecho de accesión en Puerto Rico: El abogado y su cliente*, Barcelona, Imp. Vda. de Daniel Cochs, 1970, pág. 31; *Pérez v. Col. Cirujanos Dentistas de P.R.*, 131 D.P.R. 545 (1992).

Del trasfondo procesal antes consignado, resulta que, contrario al criterio del foro sentenciador, fue evidente la forma *temeraria* de litigar de la Autoridad de Acueductos y Alcantarillados. Causó una dilación innecesaria en la pronta solución de este caso. Procede la imposición de tres mil dólares ($3,000) en honorarios e intereses. *Pérez v. Col. Cirujanos Dentistas de P.R.*, supra; *Corpak Art Printing v. Ramallo Brothers*, supra; *Raoca Plumbing v. Trans World*, 114 D.P.R. 464, 468 (1983); *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 D.P.R. 38, 40 (1962).

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Rebollo López emitió una opinión de conformidad. Los Jueces Asociados Señores Hernández Denton y Alonso Alonso concurrieron con el resultado por estimar que debió imponérsele sólo un veinticinco por ciento (25%) de negligencia a Dennis O. Gutiérrez Cortés, y consideran que es injusto atribuirle al señor Gutiérrez Cortés un grado mayor de negligencia en vista de las circunstancias particulares del caso siguientes: (1) el camión y su arrastre estaban estacionados en el carril izquierdo de una carretera de dos (2) carriles en cada dirección, donde el máximo de velocidad permitido es cincuenta (50) millas por hora; (2) tanto el camión como la excavadora que arrastraba carecían de luces traseras, y (3) la carretera estaba totalmente oscura, por lo que la visibili-

dad del conductor dependía totalmente de las luces de su auto.

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Rebollo López.

Acogemos, con beneplácito, el hecho de que el Tribunal en el día de hoy haya entendido procedente revocar la decisión mayoritaria que se emitiera en *Molina, Caro v. Dávila*, 121 D.P.R. 362 (1988), y establecer, como norma mayoritaria, lo expuesto por nosotros en la opinión disidente que en dicho caso emitiéramos; a la cual, en aquel entonces, se unieron los Jueces Asociados Señor Negrón García y Señora Naveira de Rodón.

Conforme expresáramos en la ponencia disidente que entonces emitiéramos, la aplicación de la norma establecida en el citado caso de *Molina, Caro v. Dávila*, nos lleva al absurdo; situación que un tribunal de justicia siempre tiene la obligación de evitar.

Resulta, cuando menos, alentador que el Tribunal haya tenido la valentía de revocar dicha errónea norma. La actuación del Tribunal en el día de hoy nos brinda ánimo para continuar nuestra labor. La misma constituye prueba fehaciente de que la posición disidente que en un momento determinado podamos propulsar tiene posibilidades de convertirse en la norma mayoritaria en el futuro.