TEXTO COMPLETO DE LA SENTENCIA
La Asociación de Condómines Edificio Parra ("Asociación") nos solicita la revisión de una sentencia emitida el 30 de abril de 1999 por el Tribunal de Primera Instancia, Sala Superior de Ponce, copia de cuya notificación fue archivada en autos el 24 de junio del mismo año. Mediante este dictamen, ese tribunal estimó la demanda en daños y perjuicios presentada por la Sra. Críspula Ramos Torres, Tomás González Caraballo y Osvaldo Torres Torres, ("Apelados") y condenó a la Asociación a satisfacerle a éstos la suma total de $27,000.00 para compensar los daños que habían sufrido como consecuencia de que la Sra. Ramos Torres se cayera en una acera del edificio propiedad de la Asociación.
La parte apelante no sometió una exposición narrativa de la prueba. Habiendo presentado los apelados su alegato, estamos en condiciones de dictaminar.
I
A base de la prueba testifical y documental que recibiera, el tribunal de instancia llegó a las siguientes determinaciones de hechos, las cuales transcribimos a continuación:

“El día 8 de diciembre de 1994, la señora Críspula Ramos acudió al Edificio Parra, donde ubica la oficina de su oftalmólogo, Dr. Jorge Hernández, a una cita de seguimiento relacionada a una operación de su ojo izquierdo, la cual se había realizado el día anterior a dicho accidente. La señora Ramos fue llevada al Edificio Parra por su esposo, señor Tomás González Caraballo, y en ese momento tenía su ojo izquierdo vendado. Al llegar al estacionamiento del edificio, encontraron la entrada congestionada y, por tanto, el señor González Caraballo dejó a la señora Ramos en una acera aledaña al Edificio Parra y se dirigió a estacionar su vehículo.

La señora Críspula Ramos subió por una acera que conduce al Edificio Parra. Al llegar al final de dicha acera, se encuentra con un desnivel de seis (6) a ocho (8) pulgadas. La señora Ramos se percata del cambio de nivel en la acera, pero por tener su ojo izquierdo vendado no pudo calcular adecuadamente la profundidad del 
*618
mismo. Por tal razón, al intentar proseguir por el mismo, pierde el balance y sufre una caída.

El desnivel de seis (6) a ocho (8) pulgadas se encontraba pintado de amarillo.

Como consecuencia de la caída, la señora Ramos Torres sufrió una fractura en el talón [tendón] de aquiles de la pierna izquierda, la cual tuvo que ser enyesada por tres (3) meses.

La demandante, en el tiempo que tuvo el pie enyesado sufrió dolor en dicha pierna, angustias mentales y de ansiedad al no poder mover su pierna.

Luego que le removieron el yeso, la demandante continúa sufriendo de dolor y tiene que utilizar zapatos ortopédicos.

El codemandante, señor González Caraballo, luego del accidente, ha tenido que ayudar a su esposa en las tareas y faenas diarias y le ha causado penas, angustias y sufrimientos mentales al ver a su esposa con la lesión.

El codemandante, Osvaldo Torres Torres, hijo de crianza del señor González Caraballo y de la señora Ramos Torres, ha sufrido penas y angustias mentales al ver a su madre con las lesiones y los sufrimientos que dicha lesión le ha ocasionado. ”

El tribunal apelado estimó, además, que como la Asociación no había corregido el desnivel en las mtas de acceso al Edificio Parra, conforme requiere la American With Disabilities Act (ADA), 42 U.S.C. secs. 12101 et seq., aprobada el 26 de julio de 1990, con el propósito de proteger a las personas con impedimentos de prácticas discriminatorias, concluyó que al tenor del artículo 1802 de Código Civil de Puerto Rico, 31 L.P.R.A. see. 5141, la Asociación había faltado a su deber jurídico hacia la Sra. Ramos y la condenó a compensar a los apelados de la forma antes indicada, no obstante, haber determinado que el edificio tenía una rampa de acceso, que la Sra. Ramos había utilizado una acera aledaña y ella había contribuido con su propia negligencia, pues al momento del accidente había sido intervenida quirúrgicamente en el ojo izquierdo, el cual se encontraba tapado con una venda, y que por tal motivo tenía una incapacidad temporera que le afectaba la vista, de tal forma que caminaba con dificultad, menoscabando su seguridad y exponiéndola al peligro.
Como entendió que la Sra. Ramos fue un veinticinco (25) por ciento negligente, le redujo a los apelados veinticinco (25) por ciento proporcional de las sumas que concedió como compensación, conforme la norma adoptada en Miranda v. E.L.A, 137 D.P.R. 700 (1994).
Condenó a los codemandados a pagar $36,000.00 a los codemandantes que se distribuirán de la siguiente manera:
Sra. Críspula Ramos $27,000.00 - 25% = $20,250.00
Sr. Tomás González 6,000.00 - 25% = 4,500.00
Sr. Osvaldo Torres 3,000.00 - 25% 2,250.00
Total $36,000.00 - $27,000.00
Inconforme, la Asociación acude ante nos y en su recurso le imputa al tribunal de instancia la comisión de los siguientes errores:

“(1) Al aplicar las disposiciones de la Ley ADA y en la apreciación de la prueba al imponerle responsabilidad a la Asociación, cuando de la prueba sometida y de las determinaciones de hechos plasmadas 
*619
en la Sentencia, surge claramente que la caída que motiva la demanda se debió a la única y exclusiva negligencia de la [Sra. RamosJ.

(2) Al no tomar en consideración prueba documental sometida en evidencia y admitida por el Tribunal.

(3) Al hacer determinaciones de daños que no fueron probados. ”

Considerados en conjunto, la apelante sostiene que la única causa del accidente fue la negligencia de la Sra. Ramos.
Luego de examinar las determinaciones de hechos formuladas por el tribunal a quo y los autos originales que incluyen las fotos de la acera, el desnivel aludido y las rampas existentes en ésta, debemos revocar la sentencia apelada. Examinemos el derecho aplicable.
n
Como es conocido, al amparo del artículo 1802 de Código Civil, ante, todo daño o perjuicio, moral o material, da lugar a la correspondiente reparación económica si concurren tres elementos o factores: 1) Que se establezca la realidad de un daño sufrido; 2) que exista un nexo causal entre el daño y la acción u omisión de otra persona, y 3) que ese acto u omisión sea culposo o negligente. Blas Toledo v. Hosp. Nuestra Señora de la Guadalupe, Op. del 30 de junio de 1998,98 J.T.S. 111; Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1 (1994); J.A.D.M. v. Centro Comercial Plaza Carolina, 132 D.P.R. 785 (1993); Coito v. C.M. Ins. Co., 116 D.P.R. 644 (1985); Hernández v. Fournier, 80 D.P.R. 93, 96-97 (1957).
A esos efectos, una persona actúa negligentemente cuando falta al debido cuidado que impone la ley; es decir, cuando no prevé o anticipa las consecuencias racionales de sus actos o la omisión de un acto, como lo haría una persona prudente y razonable bajo las mismas circunstancias. Ramos v. Cario, 85 D.P.R. 353, 358 (1962). "Así, pues, el actor habrá incurrido en el quebrantamiento de su deber de cuidado si anticipó o debió anticipar el peligro de daños... si se concluye que un hombre prudente y razonable hubiese podido anticipar tales consecuencias". Herminio M. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, San Juan, Publicaciones J.T.S., 1986, Vol. 1, pág. 184. Este deber de previsibilidad, sin embargo, no se extiende a todo peligro imaginable, sino a aquel daño que es probable que ocurra. Véase, Vélez Rodríguez v. Amaro Cora, 138 D.P.R. 182 (1995). Así, pues, para determinar la negligencia que corresponde a cada parte, es necesario analizar y considerar todos los hechos y circunstancias que mediaron en el caso y, particularmente, si ha habido una causa predominante. Herminio M. Brau del Toro, ante, pág. 412.
Ahora bien, en el artículo 1802, ante, (del Código Civil, 1930, 31 L.P.R.A. § 5141), está inmerso el principio de la causalidad adecuada, nexo eficiente entre daño y su autor, que a su vez contesta ¿cuál sería la causa próxima del accidente? Negrón García v. Noriega Ortiz, 117 D.P.R. 570, 575-576 (1986). En esta jurisdicción se ha establecido, reiteradamente, que causa es "la condición que ordinariamente produce el daño, según la experiencia general". Jiménez v. Pelegrina Espinet, 112 D.P.R. 700, 704 (1982); J. Santos Briz, Derechos de Daños, Madrid, Ed. Rev. Der. Privado, 1963, pág. 215. Elba A.B.M. v. U.P.R., 125 D.P.R. 294, 310 (1990). Es por ello que un demandado responde en daños si su negligencia, sea ésta por acción u omisión, es causa próxima del daño, aun cuando no sea la única causa del mismo. Velázquez v. Ponce, 113 D.P.R. 39 (1982).
Al determinar si una acción u omisión es la causa próxima, adecuada o eficiente de un daño, es preciso hacer una retrospección del "alegado acto negligente" para ver si éste se constituye en consecuencia razonable y ordinaria del daño delictual. Estremera v. Inmobiliaria Rac. Inc., 109 D.P.R. 852, 859 (1980). El principio de causalidad adecuada requiere que en todo caso de daños y perjuicios, el demandante pruebe que la negligencia del demandado fue la que con mayor probabilidad causó el daño sufrido. Soc. de Gananciales v. González Padín, 117 D.P.R. 94 (1986).
*620 Por otro lado, la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. HI, dispone lo siguiente:
“...Las determinaciones de hechos basadas en testimonio oral, no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos... ”. (Enfasis suplido).
Atendido ello, no se intervendrá con la adjudicación de credibilidad que haya hecho el juzgador de hechos, excepto en casos en que haya incurrido en prejuicio o error manifiesto. Flores Santiago v. Domínguez, Op. del 30 de junio de 1998, 98 J.T.S. 96; W. Stokes v. Serrano Lecaroz, Op. de 24 de abril de 1998, 98 J.T.S. 48, a la pág. 850; López Vicil v. ITT Intermedia, Op. de 4 de abril de 1997, 97 J.T.S. 42, a la pág. 838; Quiñones López v. Manzano Pozas, Op. de 25 de junio de 1996, 96 J.T.S. 95, a la pág. 1305. Esto es así, ya que es ante el juzgador de los hechos que declaran los testigos y éste es quien tiene la oportunidad de verlos declarar y apreciar su comportamiento ("demeanor"). Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R. 357, 365 (1982). En tales casos, el juzgador de los hechos es quien está indudablemente en la mejor posición para aquilatar la prueba testifical desfilada. Ortiz v. Cruz Rabón, 103 D.P.R. 939, 946 (1975).
Ahora bien, aunque las determinaciones del juzgador del tribunal a quo gozan de gran deferencia y no tienen credenciales de inmunidad frente a nuestra función revisora, Vda. de Morales v. De Jesús Toro, 107 D.P. R. 826, 829 (1978), un tribunal apelativo puede intervenir con aquellas determinaciones de un tribunal que haya incurrido en abuso de discreción o en aquellos casos en que determinemos que ha actuado movido por pasión, prejuicio, parcialidad o error manifiesto. Aponte Rivera v. Sears Roebuck, Op. del 24 de febrero de 1998, 98 J.T.S. 12; Méndez de Rodríguez v. Morales Molina, Op. de 15 de noviembre de 1996, 96 J.T.S. 149, a la pág. 347; Benitez Guzmán v. García Merced, 126 D.P.R. 30 (1990). También puede intervenir cuando del examen de la totalidad de evidencia, queda definitiva y firmemente convencido que un error ha sido cometido cuando las determinaciones de hechos están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. Maryland Casualty v. Quick Construction Corp., 90 D.P.R. 329, 336 (1964).
m
En la causa que nos ocupa, las propias determinaciones de hechos, las conclusiones mixtas de hecho y de derecho del tribunal apelado y los autos originales demuestran que la causa de acción instada debió ser desestimada.
El tribunal apelado determinó que la Sra. Ramos había sido negligente, pues al momento del accidente había sido intervenida quirúrgicamente en el ojo izquierdo, el cual se encontraba tapado con una venda y que por tal motivo tenía una incapacidad temporera que le afectaba la vista, de tal forma que caminaba con dificultad, menoscabando su seguridad y exponiéndola al peligro. Concluyó que la señora Ramos estaba consciente que su vista se encontraba limitada por la venda que llevaba en su ojo izquierdo; que, a pesar de esto, decidió no esperar por su esposo, quien había ido a estacionar el auto en el que habían llegado al Edificio Parra; que no siguió por otra vía donde sí existía una rampa; que la señora Ramos se percató del desnivel al final del acceso y, sin embargo, decidió bajarlo sabiendo que su visión se encontraba en esos momentos limitada a solamente su ojo derecho, lo que le afectaba su sentido visual de profundidad y efectivamente hizo que perdiera "...el balance".
Contrario a la apreciación del tribunal de instancia de que la Sra. Ramos fue un veinticinco (25) negligente, concluimos, sin dificultad, que los hechos determinados antes descritos sostienen, en realidad, que la negligencia de la Sra. Ramos fue la causa real, efectiva y próxima de su caída y no el hecho de que la Asociación no hubiese construido una rampa por la acera que la Sra. Ramos escogió para caminar, en vez de aquélla que daba acceso al Edificio Paria y que sí tenía una rampa para impedidos; máxime cuando allí ubicaba la oficina de su oftalmólogo a la cual había asistido antes; o sea, que conocía el lugar. Aunque no existe indicio alguno de pasión, prejuicio, parcialidad, estimamos que el balance más racional, justiciero y jurídico de los hechos determinados por el tribunal, apoyan inescapablemente que la negligencia de la Sra. Ramos fue la causa *621 próxima de sus daños, por lo que se cometió el error imputado.
IV
Por los fundamentos anteriormente expuestos, se revoca la sentencia apelada.
Lo acordó el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General