Opinión concurrente y disidente emitida por el
Juez Aso-ciado Señor Rebollo López,
a la cual se une la Jueza Asociada Señora Fiol Matta.
Aun cuando concurro con varias de las determinaciones que contiene la opinión mayoritaria —a lás chales haremos referencia más adelante— disiento vehementemente de la determinación central de la referida ponencia, la cual con-sidero no sólo incorrecta en derecho, sino injusta.
*190 I
La norma correcta y vigente en nuestra jurisdicción res-pecto al asunto ante nuestra consideración es que cuando el tribunal entiende que el demandante perjudicado o la víctima que falleció —quien es considerado como “adulto” para la posible imposición de negligencia concurrente— efectivamente incurrió en negligencia en el accidente o su-ceso por el cual se demanda, y le impone a éste como con-secuencia de ello un porciento específico de negligencia, dicho porciento le aplica —y se le puede deducir— no sólo a ese demandante peijudicado, sino a sus causahabientes, parientes y demás codemandantes. Torres Pérez v. Medina Torres, 113 D.P.R. 72 (1982); Ramos v. Caparra Dairy, Inc., 116 D.P.R. 60 (1985); Miranda v. E.L.A., 137 D.P.R. 700 (1994).(1)
Ahora bien, cuando se trata de la situación en que la víctima o el perjudicado en el accidente es un inimputable —ya sea por su tierna edad o por ser un incapacitado mental— no procede imputar a éste, y reducir de la compensa-ción que el tribunal le haya concedido por los daños que sufriera, el porciento de negligencia concurrente que el tribunal haya determinado en que incurrió su madre, padre o custodio. Véase Ramos v. Caparra Dairy, Inc., ante.
En la opinión mayoritaria se sostiene —erróneamente a nuestro juicio— que en el presente caso ello resulta proce-dente porque, de no hacerse, se estaría violando la doctrina de inmunidad interfamiliar. Ello es totalmente incorrecto. Veamos.
*191 En 1950 se estableció jurisprudencialmente en nuestra jurisdicción que los hijos no pueden instar acciones en daños y perjuicios contra sus padres, cuando ello afecte la inmunidad familiar, la institución de la patria potestad y las relaciones paterno-filiales. Véase Guerra v. Ortiz, 71 D.P.R. 613 (1950). Fundamentamos nuestra decisión en que la unidad familiar, la patria potestad y las relaciones paterno-filiales gozan de un alto interés público en nuestro ordenamiento, y que reconocer una acción en daños y per-juicios incoada por un hijo contra un padre abriría una brecha peligrosa en la unidad familiar.
Posteriormente, en Fournier v. Fournier, 78 D.P.R. 430 (1955), reconocimos que la doctrina de inmunidad interfa-miliar no es absoluta, por lo que en los casos en los cuales no exista inmunidad interfamiliar que proteger, ni relacio-nes paterno-filiales que conservar, se iban a permitir recla-maciones extracontractuales de un hijo contra su ascendiente. La segunda excepción a esta doctrina se reconoció en Drahus v. Nationwide Mutual Ins. Co., 104 D.P.R. 60 (1975). En dicho caso se permitió una acción directa de una hija contra la compañía de seguros de su padre, porque ello no constituía una amenaza a la integridad y a la paz familiar que se quiso proteger con la doctrina de la inmunidad; ello por la obvia razón de que la hija no estaba de-mandando directamente al padre.
Por estimar necesario y conveniente incorporar en la ley lo que había resuelto este Tribunal, la Asamblea Legisla-tiva aprobó la Ley Núm. 193 de 6 de septiembre de 1996, mediante la cual se añadió el Art. 1810A al Código Civil de Puerto Rico, 31 L.P.R.A. see. 5150, el cual establece que
[n]ingún hijo podrá demandar a sus padres en acciones ci-viles en daños y peijuicios cuando se afecte la unidad familiar, la institución de la patria potestad y las relaciones paterno-filiales. Disponiéndose, que dicha prohibición no será absoluta y podrá ejercitarse la acción en daños y perjuicios cuando no haya unidad familiar que proteger, ni relaciones paterno-filiales que conservar. (Enfasis suplido.)
*192 Nótese que lo que se prohíbe —y no de forma absoluta— es que un hijo, de forma expresa e intencional, presente una demanda contra uno de sus progenitores. Esto es, no se trata —como en el presente caso— de un resultado au-tomático al que se llega como consecuencia de un proceso de nivelación. No hay acción afirmativa de parte del hijo contra el progenitor negligente.
Dicho de otra manera, en el proceso dé nivelación entre el demandado extraño al núcleo familiar contra el deman-dante negligente en el cuidado del inimputable y, por lo tanto cocausante de los daños de éste, no se da la litigación intrafamiliar que genera animosidad y relaciones tirantes entre padre e hijo que caracterizan la confrontación adversativa. Menos aun es la posibilidad de que se produz-can rencores y resentimientos cuando en la máyoría de las veces el pariente miembro del círculo familiar cercano, que sería protegido por la inmunidad interfamiliar y que fue negligente en la supervisión del menor, es demandante en el pleito, por lo que recibirá indemnización por sus propios sufrimientos o por los daños heredados de la víctima y con ellos puede compensar su deuda. Como vemos, no estamos hablando de una acción directa y expresa del menor inim-putable —que generalmente está representado por sus progenitores— contra su padre o su madre.
Por último, la opinión mayoritaria afirma que lo más justo y equitativo es disminuir la indemnización del menor que sufrió los daños para evitar la posterior acción de ni-velación de la parte demandada en contra de un miembro de la familia del menor. Estamos en total desacuerdo. Es el menor inimputable quien sufrió mayores daños físicos y emocionales que lo afectarán por el resto de su vida, por lo cual, lo más justo es que sea a éste a quien se le remunere totalmente en lugar de disminuirse su indemnización.
En fin, reducir en un 15% la suma de dinero que le corresponde al menor en el presente caso, como lo hace la mayoría, no sólo es improcedente en derecho, sino que im- *193 plica la comisión de una injusticia. Es por ello que disenti-mos, vehementemente, de esta determinación de la mayo-ría del Tribunal.
II
Por otro lado, concurrimos con la parte de la opinión mayoritaria que reinstala la causa de acción de los padres del menor, ya que del propio texto del Art. 1802 del Código Civil, 31 L.P.R.A. see. 5141, surge que, en casos de negli-gencia concurrente, no se desestimará la reclamación de los cocausantes del daño sino que. meramente se reducirá la indemnización en lo que proceda. Estoy de acuerdo, ade-más, con la determinación mayoritaria de que la madre del menor no fue negligente, pues éste no se encontraba, al momento del accidente, bajo su supervisión.
Por último, estoy de acuerdo con la redistribución de responsabilidad que hace este Tribunal de que el padre del niño fue responsable únicamente en un 15% de los daños sufridos por su hijo.
Debe quedar claro, sin embargo, que disiento de la ma-yoría al imputarle a un menor de tres años de edad la negligencia de su padre, aun cuando había concluido que dicho niño era inimputable.

 Debe enfatizarse el hecho de que en Miranda v. E.L.A., 137 D.P.R. 700 (1994), el Tribunal citó con aprobación la posición disidente que habíamos expuesto en Molina, Caro v. Dávila, 121 D.P.R. 362 (1988), caso en que por votación dividida de cuatro contra tres se había sostenido, erróneamente, la posición contraria.
El hecho de que se citara con aprobación —y se adoptara— la posición disidente nuestra claramente demuestra que fue un error, o lapsus lingua, la afirmación que se hiciera en Miranda sobre que se reinstalaba la norma de Quintana Martínez v. Valentín, 99 D.P.R. 255 (1970). Dicha aseveración no sólo era contraria a lo que se resolvió, sino que era totalmente innecesaria.