Gilberto Gierbolini, Juez Ponente
*909 TEXTO COMPLETO DE LA SENTENCIA
El 16 de julio de 2002, Heriberto Alonso Rivera (en adelante, licenciado Alonso) presentó ante este Tribunal recurso de Apelación en el que nos solicitó la revisión de la Sentencia emitida por el Tribunal de Primera Instancia, Sala de San Juan (TPI) el 6 de junio de 2002 y notificada el 13 de ese mismo mes y año. En dicha sentencia, el TPI declaró Con Lugar la demanda presentada por Alonso y otros y en consecuencia, condenó a los co-demandados Fernando Arteaga (en adelante, Arteaga) y Mango’s Café (en adelante, Mango’s) a indemnizar a los co-demandantes de manera solidaria por los daños sufridos. El foro recurrido determinó que en dicho caso hubo negligencia comparada entre las partes, a cuyos efectos adjudicó un 40% de negligencia a Alonso, 45% a Mango’s y un 15% a Arteaga. Por otra parte, en esa misma sentencia, el TPI declaró No Ha Lugar la demanda de co-parte presentada por el co-demandado Arteaga y la reconvención presentada por la compañía aseguradora de Mango’s, National Insurance Company (en adelante, National).
Luego de varios trámites procesales, los cuales es innecesario discutir en este momento y de recibir la exposición narrativa estipulada por las partes, nos encontramos en posición de resolver en sus méritos el presente recurso.
Por los fundamentos que expondremos a continuación, CONFIRMAMOS la Sentencia apelada.
I
El 10 de diciembre de 1997, aproximadamente a la 10:30 PM, Alonso llegó a Mango’s Café acompañado de un cliente suyo de nombre Ricardo Márquez (en adelante, Márquez), luego de haber visitado otros lugares como Shannan’s Pub, TGI’s Friday y St. Mick’s. Al llegar a Mango’s, el demandante ya había ingerido durante esa noche alrededor de diez tragos de alcohol.
Por su parte, el co-demandado Arteaga arribó a Mango’s alrededor de esa misma hora junto a tres compañeros de trabajo de nombre Camille San Miguel (en adelante, Camille), Jessica Irizarry (en adelante, Jessica) y Orval Sifontes. Al llegar, Arteaga y sus acompañantes ocuparon una de las mesas del comedor del negocio y como a la media hora decidieron moverse a la barra, en vista de que el área de las mesas iba a ser cerrada. Arteaga, Camille y Jessica ocuparon asientos en ese mismo orden de izquierda a derecha en el lado corto de la barra. Orval Sifontes, por el contrario, decidió abandonar el lugar. Arteaga quedó sentado en la silla inmediatamente a la izquierda de Alonso, quien estaba sentado, a su vez, a la derecha de su cliente Márquez. En el lugar también estaba un amigo de Márquez, de nombre Jack Semanaz, quien estaba sentado en la barra al lado de Jessica.
Como era costumbre entre ellos, Arteaga, Camille y Jessica, junto al cantinero de Mango’s, Rafael Rivera (en adelante, Rivera), comenzaron a jugar un juego conocido como generala, al cual Alonso solicitó le permitieran participar. Durante el juego, el co-demandante apelante observó un comportamiento agresivo, ofensivo y provocativo hacia los demás jugadores, a consecuencia de los tragos que había ingerido. Al tocarle el tumo de jugar a Rivera, el demandante dirigió a éste frases tales como: "avanza puñeta, maricón, pendejo," a lo que Rivera no le hizo caso. No obstante, en su segundo turno de juego, Alonso volvió a proferir palabras soeces *910 a Rivera por lo que éste optó por abandonar el juego y quedar ubicado en la parte larga de la barra. Alonso, además, insultó y ofendió a las compañeras de Arteaga, a las que profirió palabras obscenas, tales como "baby estás buena, te voy a llevar a casa, te voy a partir en dos." En alrededor de 15 a 20 ocasiones también las llamó "putas", a lo qüe Arteaga le solicitó que fuera más tranquilo. El co-demandado, a su vez, solicitó a las personas presentes en ese lugar, inclusive al cantinero, que si alguien conocía a Alonso, lo sacara del lugar.
No empece a que Alonso había proferido palabras insultantes y obscenas a las compañeras de Arteaga, éstos le permitieron participar en un segundo juego de generala. Durante el mismo, Alonso continuó observando el mismo comportamiento insultante y ofensivo hacia Camille y Jessica, pero ni éstas ni Arteaga abandonaron el juego ni optaron por partir de Mango’s. Durante el transcurso de la noche, Arteaga ingirió alrededor de dos tragos de alcohol.
Mientras esto acontecía, un parroquiano de nombre Joel, quien trabajaba como cantinero en Shannon’s Pub y quien era conocido por Rivera, le advierte a éste que había un problema en la esquina donde estaban ubicados Alonso y el grupo de Arteaga. Esta misma advertencia le fue dada al cantinero por Joel en dos ocasiones más. No obstante, Rivera hizo caso omiso a las dos primeras; sólo limitó su acción a mirar de reojo hacia la esquina señalada y continuó sirviendo tragos.
En determinado momento, Alonso comenzó a tocar con su codo el brazo de Arteaga, lo jamaqueó y le dijo: "Te voy a matar a ti y a las "putas" que andan contigo me las voy a llevar." Acto seguido, Alonso se levantó de su silla y de frente a Arteaga, quien quedó de espaldas a la barra, le gesticuló de forma amenazante con un vaso de cristal en la mano. Para repeler la agresión, Arteaga tomó una cacerola que, según él quedaba ubicada en la estación de sodas de la barra, y golpeó varias veces al licenciado Alonso en distintas partes del cuerpo. En ese momento es, simultáneo a la tercera advertencia de Joel, que el cantinero interviene por primera vez con Alonso y Arteaga solicitando a este último que le entregara la cacerola y abandonara el lugar, lo cual éste así hizo.
Alonso, por su parte, con la cara ensangrentada, intentó también salir de la escena caminando de espaldas, lo que ocasionó que cayera al piso. Acto seguido, Rivera con ayuda de otra persona, sacó a Alonso del negocio y cerró la puerta con llave. No obstante, el cantinero no llamó a la Policía para reportar el incidente ni a Emergencias Médicas. Una mesera de nombre Daisy procedió a limpiar la sangre.
Márquez, entonces, condujo a Alonso al Hospital Interamericano de Medicina Avanzada (HIMA) en Caguas, debido a las heridas sufridas. El médico que lo atendió determinó que el co-demandante apelante, sufrió una herida en su frente de aproximadamente cuatro pulgadas de largo y dos heridas en la parte posterior de la cabeza, para lo cual recibió sobre 40 puntos de sutura. 
Así las cosas, el 10 de diciembre de 1998, Alonso, sus padres Heriberto Alonso Vázquez y Maggie Rivera de Alonso por sí y en representación de la Sociedad Legal de Gananciales compuesta por ambos; y María Jiménez Bermúdez, compañera sentimental del co-demandante apelante, presentaron demanda de daños y perjuicios contra Mango’s Café, Cool Runnings, Inc., National, Víctor Cruz y Fernando Arteaga, por los daños sufridos a consecuencia de la agresión de parte de Arteaga hacia Alonso. La demanda fue enmendada el 25 de febrero de 1999, y contestada por todas las partes. En la misma, Alonso alega que fue agredido por Arteaga en múltiples ocasiones en la cabeza y varias partes del cuerpo sin mediar provocación alguna de su parte. Argumentó, además, que Arteaga tuvo acceso a la cocina de Mango’s de donde sustrajo un sartén de hierro, con el cual cometió dicha agresión. Este indicó que, luego de la agresión, empleados de Mango’s lo sacaron del negocio y lo dejaron abandonado a la entrada sin ofrecerle primeros auxilios o procurar que otras personas le brindaran ayuda, a pesar de él estar sangrando e inconsciente. A tales efectos, alegó que el co-demandado Mango’s fue negligente al omitir proveer una seguridad adecuada a sus patrocinadores y visitantes.
*911 En la demanda, Alonso solicitó al TPI una compensación de $850,000.00 por concepto de daños físicos y corporales; $650,000.00 por pérdida de ingresos pasados, presentes y futuros; $350,000.00 por sufrimientos y angustias mentales y $40,000.00 por concepto de gastos médicos. Además, solicitó una compensación para sus padres de $225,000.00 por angustias mentales y $3,000.00 por gastos médicos. Para su compañera sentimental, María Jiménez, solicitó la cantidad de $125,000.00 por concepto de angustias mentales.
Por otro lado, Arteaga, en su contestación a la demanda, negó toda responsabilidad de su parte. En su lugar, presentó varias defensas afirmativas, entre éstas, legítima defensa; que los alegados daños fueron en todo o en parte ocasionados por los actos del demandante y por la negligencia de otras personas o entidades jurídicas; prescripción y abuso de bebidas alcohólicas por parte del demandante.
El 21 de diciembre de 1999, Arteaga presentó demanda de co-parte en contra de los co-demandados Mango’s y su compañía aseguradora. En la misma, alegó que la responsabilidad en el presente caso recaía en Mango’s y que en virtud de ello, ésta vendría obligada a responderle al demandante por los daños que éste pruebe en su día. El 24 de enero de 2000, National contestó la demanda de co-parte y presentó reconvención en contra de Arteaga. En la misma, alegó que la responsabilidad legal, si alguna, recaía, además del demandante, en Arteaga y que éste vendría obligado a pagarle a la parte demandante los daños que en su día prueben.
El juicio fue celebrado los días 29, 30, 31 de octubre y 1 de noviembre de 2001. Antes de pasar prueba en la vista en su fondo, la parte demandante desistió de la causa de acción en contra del co-demandado Víctor Cmz y de las alegaciones referentes a la pérdida de ingreso. El 29 de octubre de 2001, el Tribunal realizó inspección ocular del lugar donde ocurrieron los hechos, en especial de la barra. La prueba que tuvo ante sí el TPI consistió, por la parte demandante, en los testimonios del co-demandante Alonso, de sus padres Doña Maggie Rivera de Alonso y Don Heriberto Alonso Vázquez, de María I. Jiménez Bermudez, del co-demandado Arteaga, de Jack Semanaz y el cantinero Rafael Rivera. Por la parte demandada, testificaron el co-demandado Arteaga, una de las acompañantes de éste, Camille San Miguel y del Sr. Víctor Cruz, co-dueño de Mango’s.
Así las cosas, el 6 de junio de 2002, el TPI emitió sentencia, en la que declaró Con Lugar la demanda y en consecuencia, condenó a los co-demandados a indemnizar a los co-demandantes de manera solidaria por la cantidad de $39,900.00. Dicho tribunal valoró los daños físicos sufridos por Alonso en la cantidad de $32,500.00, los dolores de cabeza y empeoramiento de la condición de psoriasis en $15,000.00, las angustias mentales sufridas en $10,000.00, para un total de $57,500.00. Por las angustias mentales sufridas por los otros co-demandantes, la indemnización otorgada fue de $3,000.00 para cada uno. En cuanto al grado de responsabilidad, el TPI determinó que en este caso hubo negligencia comparada entre las partes, a cuyos efectos adjudicó un 40% a Alonso, 45% a Mango’s y un 15% a Arteaga. Por otra parte, en esa misma sentencia, el TPI declaró No Ha Lugar la demanda de co-parte presentada por el co-demandado Arteaga así como la reconvención presentada por National.
Inconforme con dicha decisión, el 19 de junio de 2002, Arteaga presentó una "Moción Solicitando Determinaciones de Hechos y Derecho y Reconsideración". Asimismo, el 28 de junio de 2002, Alonso, inconforme con las cuantías otorgadas por el tribunal sentenciador, presentó una "Moción de Reconsideración y Solicitud de Vista". El 2 de julio de 2002, el TPI declaró No Ha Lugar ambas mociones.
Así las cosas, el 16 de julio de 2002, Alonso acudió ante nos mediante recurso de Apelación en el que alegó la comisión de los siguientes errores:

“1. Erró el Honorable Tribunal de Primera Instancia al concluir como cuestión de derecho que el Ledo. Heriberto Alonso Rivera incurrió en negligencia comparada.

2. Erró el Honorable Tribunal de Primera Instancia al concluir como cuestión de derecho que la alegada 
*912
negligencia incurrida por el Ledo. Heriberto Alonso Rivera es imputable a los otros co-demandantes-apelantes.

3. Erró el Honoráble Tribunal de Primera Instancia al conceder una indemnización irrazonable a los co-demandantes apelantes Heriberto Alonso Vázquez, Maggie Rivera de Alonso y María Jiménez Bermudez.

4. Erró el Honorable Tribunal de Primera Instancia al no conceder cuantía alguna por el dinero que el Sr. Heriberto Alonso Vázquez tuvo que pagar al Hospital Interamericano de Medicina Avanzada (HIMA) a pesar que la parte demandante-apelante presentó prueba irrefutable sobre dicho pago.

5. Erró el Honorable Tribunal de Primera Instancia al no conceder indemnización alguna por las lesiones sufridas por el Ledo. Heriberto Alonso Rivera en la cara y parte posterior de la cabeza, a pesar que determinó como un hecho probado la existencia de dichas lesiones.

6. Erró el Honorable Tribunal de Primera Instancia al conceder al Ledo. Heriberto Alonso Rivera una indemnización irrazonable que no es cónsona con las indemnizaciones concedidas por este Honorable Tribunal y el Tribunal Supremo de Puerto Rico por daños similares a los sufridos por dicho co-demandante apelante.

7. Erró el Honorable Tribunal de Primera Instancia al no determinar que como cuestión de derecho los demandados apelados incurrieron en temeridad. ”

II
Reiteradamente, hemos señalado que no debemos intervenir con las determinaciones de hechos que hace un tribunal de instancia y sustituir nuestro criterio por el del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su “demeanor”, Ramos Acosta v. Caparra Dairy Inc., 113 D.P.R. 357, 365 (1982).
En cuanto a este punto, en Ortiz v. Cruz Pabón, 103 D.P.R. 939, 947 (1975), el Tribunal Supremo expresó:
"... y es que no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical, y sin embargo, todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valer, incluso, más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; le faltará el instrumento más útil para la investigación de la verdad; la observación... ”.
De ahí, la norma trillada de “no intervenir con la apreciación que de la prueba desfilada haya hecho el foro de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto,” Trinidad v. Chade, 153 D.P.R. _ (2001), 2001 J.T.S. 10, Opinión de 18 de enero de 2001, a la página 793; Sepúlveda v. Depto. de Salud, 145 D.P.R. 560, 573 (1998); Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez Cruz v. Hospital de la Concepción, 115 D.P.R. 721, 728 (1984); Vélez v. Srio. de Justicia, 115 D.P.R. 533, 545 (1984). No empece a esta norma, el Tribunal Supremo ha dicho que “[e]l arbitrio del juzgador de hechos es respetable, mas no es absoluto. Una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal,” Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987); Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R. 357, 365 (1982); Vda. de Morales v. De Jesús Toro, 107 D.P.R. 826, 829 (1978). Así pues, los foros apelativos pueden dejar sin efecto las determinaciones de hechos realizadas por el foro de instancia, siempre que “del examen de la totalidad de la evidencia, el Tribunal de revisión queda definitiva y firmemente convencido que un error ha sido cometido, como es el caso en que las conclusiones de hechos están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida,” Abudo Servera v. A.T.P.R., 105 D.P.R. 728, 731 (1977); Maryland Casualty Co. v. Quick Const. *913 Corp., 90 D.P.R. 329, 336 (1964).
Ill
“Daño es todo aquel menoscabo material o moral que sufre una persona, ya en sus bienes vitales naturales, ya en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra,” García Pagán v. Shiley Caribbean, 122 D.P.R. 193, 205-206 (1988). Reiteradamente, hemos expresado que en nuestro sistema de derecho, el daño, conjuntamente con el acto y omisión culposa o negligente, y el nexo de causalidad entre éstos, constituyen los elementos indispensables de la causa de acción resarcitoria de daños y perjuicios establecida en el Artículo 1802 del Código Civil, 31 L.P.R.A. Sección 5141. También es sabido que la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización, Artículo 1802, supra. Véase, además, Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 176 (1996). Esto último es conocido como la doctrina de la negligencia comparada. En relación a ésta, Brau del Toro, señala lo siguiente:
"Conforme a esta doctrina, la que impera al presente en Puerto Rico, la negligencia concurrente o contribuyente del demandante (y la asunción de riesgos por éste), sirve para mitigar, atenuar o reducir la responsabilidad pecuniaria del demandado, pero no para eximir totalmente de responsabilidad a éste."Se ha dicho que esta norma tiende a individualizar las indemnizaciones por daños, colocando el rigor económico en las partes, conforme a la proporción de su descuido y negligencia. La misma requiere que en todos los casos el juzgador, además de determinar el monto de la compensación que corresponde a la víctima, determine la fracción de responsabilidad o negligencia que corresponde a cada parte, y reduzca la indemnización del demandante de conformidad con esta distribución de responsabilidad. Así pues, para determinar la negligencia que corresponde a cada parte en casos de negligencia comparada, es necesario analizar y considerar todos los hechos y circunstancias que mediaron en el caso, y particularmente si ha habido una causa predominante.” H. M. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, 2da Ed., San Juan, Publicaciones. J.T.S., 1986, según citado en Quiñones López v. Manzano Pozas, supra, a la página 176.
Como hemos mencionado, para que exista responsabilidad civil bajo el Artículo 1802, supra, es necesario que concurran los siguientes elementos: un daño, una acción u omisión negligente y la correspondiente relación causal entre el daño y la conducta culposa o negligente, Toro Aponte v. E.L.A., 142 D.P.R. 464, 472-473 (1997). Por otro lado, los elementos que han de ser considerados en la determinación de si una omisión genera responsabilidad son: (1) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño, el incumplimiento del cual constituye la antijuricidad, y (2) si de haberse realizado el acto omitido se hubiera evitado el daño, Tormos Arroyo v. D.I.P., 140 D.P.R. 265, 271 (1996); citando a Soc. de Gananciales v. G. Padín Co., Inc., 117 D.P.R. 94 (1986).
La negligencia por omisión surge al no anticipar aquellos daños que una persona prudente y razonable podría racionalmente prever que resultarían de no cumplir con el deber. Dicho de otro modo, “un daño no genera una causa de acción por negligencia, si dicho daño no fue previsto, ni pudo haber sido razonablemente anticipado por un hombre prudente y razonable, ” Colón González v. Tienda K Mart, 2001 J.T.S. 98, Opinión de 26 de junio de 2001, a la página 1483, citando a Brau del Toro, opinión cit., página 185. 
Precisamente, es del inciso dos antes mencionado que surge el deber de previsibilidad que da lugar a la responsabilidad bajo al Artículo 1802. Claro está, esto no quiere decir que la persona esté obligada a prever todos los posibles riesgos que puedan ser concebidos en una determinada situación, pues prácticamente quedaría convertida entonces en una responsabilidad absoluta, Pacheco v. A.F.F., 112 D.P.R. 296, 300 (1982); Colón González v. Tienda K Mart, supra, a la página 1483. “El deber de previsión no se extiende a todo peligro imaginable que concebiblemente pueda amenazar la seguridad... sino a aquél que es probable que suceda y que llevaría a una persona prudente a anticiparlo,” Hernández v. Gobierno de la Capital, 81 D.P.R. 1031, 1038 (1960). Cabe señalar que “[ejl deber de cuidado incluye tanto la obligación de anticipar como la de evitar la *914 ocurrencia de daños cuya probabilidad es razonablemente previsible, ” Elba A.B.M. v. U.P.R., 125 D.P.R. 294, 309 (1990).
Por otra parte, “[l]a culpa consiste en la omisión de la diligencia exigible, mediante cuyo empleo podría haberse evitado el resultado dañoso. (Cita omitida). La diligencia exigible es la que cabe esperar del ser humano medio, el buen paterfamilias. Si el daño es previsible por éste, hay responsabilidad. Si no es previsible, estamos generalmente en presencia de un caso fortuito," Tormos Arroyo v. D.I.P., supra, a la página 274, citando a Jiménez v. Pelegrina Espinet, 112 D.P.R. 700, 704 (1982).
Por otra parte, a los fines de considerar la causa legal o causalidad productora de responsabilidad jurídica, en nuestro ordenamiento jurídico rige la doctrina de la causalidad adecuada para determinar la existencia de relación causal entre la acción u omisión culposa o negligente y el daño sufrido, Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702 (1990); Jiménez v. Pelegrina Espinet, supra; Soc. de Gananciales v. Jerónimo Corp., 103 D.P.R. 127 (1974), según citados en Torres Maldonado v. J.C. Penney Co., 130 D.P.R. 546, a la página 559. Conforme a ella, “no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general,” J. Santos Briz, Derecho de Daños, Madrid, Ed. Rev. Der. Privado., 1963, páginas 215 y ss., y Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Rev. Der. Privado, 1984, Tomo XXIV, página 267. Esta normativa ha sido fundamentalmente desarrollada con el propósito de limitar la responsabilidad civil a aquellos casos en que la ocurrencia de un hecho dañoso sea imputable moralmente a su alegado autor, porque éste era una consecuencia previsible o voluntaria del acto negligente, Soto Cabral v. E.L.A., 138 D.P.R. 298, 317 (1995). Así pues, “un daño parece ser el resultado natural y probable de un acto negligente si después del suceso, y mirándolo retroactivamente el acto que se alega ser negligente, tal daño aparece como la consecuencia razonable y ordinaria del acto,” Toro Aponte v. E.L.A., supra, a la página, 474; Torres Trumbull v. Pesquera, 97 D.P.R. 338, 343-344 (1969).
IV
El co-demandante apelante señala como primer error que incidió el TPI al concluir como cuestión de derecho que el Ledo. Heriberto Alonso Rivera incurrió en negligencia comparada.
En la sentencia apelada, el TPI expresó que en este caso forzosamente debía imponer responsabilidad solidaria a los co-demandados Fernando Arteaga, Mango’s Café, Cool Runnings, Inc. y su compañía aseguradora National. Como fundamento a su decisión, indicó que la conducta agresiva e insultante observada por Alonso hacia Arteaga y sus acompañantes, unida al estado voluntario de embriaguez en el que éste estaba, fue lo que provocó el incidente que causó daños a su persona, por lo que procedió a imponerle negligencia comparada al co-demandante Alonso. A causa de su imprudencia concurrente, el TPI le adjudicó a Alonso un 40% de negligencia, reduciendo así la indemnización otorgada. Coincidimos con la determinación del foro recurrido.
La prueba desfilada ante .el TPI demostró,.sin lugar.a dudas, que la actitud de Alonso hacia Arteaga y sus acompañantes fue el agente catalítico que inició el incidente que culminó en la agresión por parte del codemandado Arteaga. De esta forma, Alonso asumió un riesgo a sabiendas que Arteaga podría reaccionar a los insultos que éste le profería, tanto a él como a sus acompañantes.
En su escrito, el TPI determinó como un hecho probado que el día de los hechos Alonso había ingerido diez tragos antes de llegar a Mango’s y que su comportamiento durante el juego no era el de una persona en sus cabales. El tribunal determinó, además, que el co-demandante insultó y ofendió a las acompañantes de Arteaga y que en varias ocasiones las llamó "putas" y les profirió palabras obscenas. Ante este cuadro fáctico, dicho tribunal concluyó que el comportamiento de Alonso fue uno grosero, insultante, beligerante y ofensivo y que la conducta exhibida por éste fue una de provocación. Asimismo, la prueba desfilada en el juicio demostró que el día de los hechos Alonso hablaba en un tono de voz agresivo y que la actitud desafiante observada *915 por éste al expresarle a Arteaga que lo iba a matar, a la vez que sostenía un vaso de cristal en su mano, fue lo que provocó que Arteaga lo agrediera con una cacerola.
Los antedichos factores son suficientes para que el tribunal sentenciador le impusiera negligencia y responsabilidad a Alonso bajo el derecho aplicable. Su teoría de que fue atacado por la espalda sin provocación alguna de su parte no encuentra apoyo en el expediente y no fue creída por el TPI. Tampoco Alonso controvirtió los hechos que constaban en el expediente para establecer su responsabilidad, aun cuando tuvo oportunidad en la vista de presentar prueba para probar su teoría de cómo ocurrieron los hechos. Si bien es cierto que el testigo Jack Semanaz testificó que Alonso estaba de espaldas a Arteaga cuando éste le dio el primer golpe y que, por lo tanto, el co-demandante no tuvo oportunidad de defenderse, no es menos cierto que dicho testimonio no le mereció credibilidad alguna al TPI. Así pues, no intervendremos con la adjudicación de credibilidad ni con la apreciación de la prueba efectuada por el tribunal sentenciador. Nosotros estamos conscientes de que dicho tribunal estuvo en mejor posición para apreciar y evaluar la credibilidad de la prueba testifical presentada, ya que, de ordinario, sólo tenemos récords mudos e inexpresivos.
En conclusión, el co-demandante apelante no demostró ante este foro que incidió el TPI al determinar negligencia de su parte bajo los hechos que surgen del expediente. La conducta ofensiva y provocativa de Alonso hacia las acompañantes de Arteaga y su conducta desafiante hacia este último fue causa concurrente de los daños sufridos por Alonso.
V
Como segundo error, el co-demandante apelante señala que erró el TPI al concluir que la alegada negligencia incurrida por él es imputable a los otros co-demandantes.
En apoyo de la misma cita, el caso de Molina Caro v. Dávila, 121 D.P.R. 362, 374 (1988), en el cual el Tribunal Supremo resolvió que "no puede reducirse la indemnización concedida a un demandante a base de la negligencia contribuyente en que incurriera otro codemandante como causa de un accidente, a menos que la negligencia de este último pudiera imputarse al primero(Enfasis en el original). La decisión citada en apoyo de la contención del apelante fue revocada por nuestro más alto foro en el caso de Miranda v. E.L.A., 137 D.P.R. 700 (1994). En el citado caso, luego de concluir que la norma revocada trastocaba el precepto legal del Artículo 1802 del Código Civil, supra, que permite reducir la compensación de un demandante en la proporción de la negligencia que le es imputada, el Tribunal Supremo expresó que "en los casos en los cuales los co-demandantes sean los causahabientes, parientes o terceros de un perjudicado, que incurrió en negligencia, sus compensaciones se reducirán en esa proporción." (Enfasis nuestro). En apoyo de esta norma, Santos Briz, a su vez, indica que "a los terceros titulares de indemnizaciones se les podrá oponer la culpa concurrente del directamente perjudicado, y les afecta también, la obligación de disminuir los daños," Santos Briz, Derecho de Daños, Madrid, Ed. Rev. Der. Privado, 1963, página 280, según citado en Miranda v. E.L.A, supra, a la página 716. Por lo tanto, concluimos que el segundo error no fue cometido.
VI
Los errores 3, 4, 5 y 6 los discutiremos conjuntamente por estar los mismos relacionados con las cuantías concedidas por el TPI a los co-demandantes por concepto de los daños sufridos por Alonso.
En cuanto a la estimación y valoración de daños, los foros apelativos también debemos abstenemos de intervenir respecto a las cantidades concedidas por el foro de instancia, a menos que éstas sean ridiculamente bajas o exageradamente altas. Los tribunales tienen la difícil y angustiosa tarea de estimar y valorar las partidas de daños correspondientes, la cual descansa en el ejercicio discrecional, prudente y razonable del juzgador de hechos, animado por un sentido de justicia y de conciencia humana. Nuestro deber es procurar que el perjudicado sea resarcido de forma justa y razonable, sin que al indemnizar al demandante, el demandado resulte castigado indirectamente, S.L.G. v. Nationwide Ins. Co., 156 D.P.R. _, 2002 J.T.S. 61, Opinión de 18 *916 abril 2002, a la página 1010; Cotto Morales v. Ríos, 140 D.P.R. 604, 626 (1996). El derecho a ser compensado no puede tener carácter punitivo, sino compensatorio o reparador.
La gestión judicial de estimación y valoración de daños es una difícil y angustiosa, ya que no existe un mecanismo que nos permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas. En cuanto a este punto, el Tribunal Supremo ha expresado que "bajo la fórmula amplia de responsabilidad consagrada en el Artículo 1802 del Código Civil (cita omitida), no existe una tabla o computadora electrónica que recoja todos los elementos y premisas inarticuladas que nutren la valoración del dolor físico y mental humano y permita, mediante la aplicación de unas teclas o el oprimir unos botones, obtener el resultado final apropiado." Urrutia v. A.A.A., 103 D.P.R. 643, 647 (1975).
No hay duda que en relación con esta difícil y angustiosa labor de estimación de daños, los tribunales de instancia, de ordinario, están en una mejor posición que los tribunales apelativos para evaluar la situación, dado que éstos son los que tienen contacto directo con la prueba que a esos afectos presenta la paite que los reclama. Por tal razón, los tribunales apelativos ejercen la norma de abstención judicial y no intervienen con la decisión que a esos efectos emiten los tribunales de instancia, a menos que las cuantías concedidas por las salas sentenciadoras sean exageradamente altas o ridiculamente bajas, Toro Aponte v. E.L.A., supra, a la página 478 (1997); Sanabria v. E.L.A., 132 D.P.R. 769, 772 (1993); Riley v. Rodríguez de Pacheco, 119 D.P.R. 762, 805 (1987). Así pues, las partes que acuden a los tribunales apelativos para solicitar la modificación de las sumas concedidas a nivel de instancia vienen obligados a demostrar la existencia de circunstancias que hagan meritorio el que dichas sumas sean modificadas, Toro Aponte v. E.L.A., supra, a la página 478; Rodríguez Cancel v. A.E.E., 116 D.P.R. 443, 451-452 (1985); Publio Díaz v. E.L.A., 106 D.P.R. 854, 868 (1978); Urrutia v. A.A.A., supra, a las páginas 647-648.
En este caso, la prueba presentada para la determinación de los daños sufridos por Alonso estuvo basada en testimonios, incluyendo peritos, y en documentos. Los daños físicos y emocionales sufridos por el co-demandante apelante, a base de la prueba, fueron aquilatados y valorados por el tribunal sentenciador en la cantidad de $57,500.00. Asimismo, valoró en $3,000.00 las angustias mentales sufridas por cada uno de los otros co-demandantes.
Un examen detenido y minucioso de toda la prueba presentada en el presente caso, especialmente la de carácter pericial, nos convence de que la determinación que hiciera el tribunal de instancia en cuanto a los daños sufridos por los co-demandantes y la cuantía concedida por dicho concepto está ampliamente sostenida por la referida prueba y no corresponde a este Tribunal intervenir con la misma.
En cuanto a la alegación del co-demandante apelante de que el TPI no le concedió cuantía alguna por el dinero que su padre, el Sr. Heriberto Alonso Vázquez tuvo que pagarle al HEMA, entendemos que es improcedente. Fuera del propio testimonio del señor Alonso Vázquez, el co-demandante apelante no presentó evidencia alguna que acreditara dicho pago, la cantidad de éste ni por concepto de qué fue hecho, como por ejemplo, una factura, un recibo o certificación del hospital. Por lo tanto, concluimos que no erró el TPI al no conceder reembolso al co-demandante apelante por concepto de dicho pago.
Tampoco le asiste la razón al co-demandante apelante cuando alega que el TPI erró al no concederle a Alonso indemnización alguna por las lesiones sufridas en la cara y parte posterior de la cabeza, a pesar de haber determinado su existencia como un hecho. Luego de analizar la parte dispositiva de la Sentencia del TPI, entendemos que la indemnización otorgada por ese tribunal al co-demandante apelante, ascendente a la cantidad de $47,500.00, por concepto de daños físicos, cubre todos los daños físicos sufridos por éste, incluyendo las heridas en su cabeza y rostro. Aun cuando dicho foro en su sentencia, al momento de otorgar compensación, no hizo mención alguna de los cuarenta puntos de sutura tomados al co-demandante apelante, ni detalló específicamente qué partida de las otorgadas corresponde a dichas heridas, entendemos que las mismas fueron *917 incluidas en la indemnización total concedida.
Por otro lado, luego de un profundo análisis, no hemos encontrado apoyo en jurisprudencia alguna que nos convenza de la novel teoría esbozada por el co-demandante apelante de que es "harto conocido que los tribunales conceden al menos $1,000.00 por cada punto de sutura," y que, por tal razón, este Tribunal debe modificar la sentencia emitida por el TPI y otorgarle una indemnización de al menos $80,000.00 por las heridas en la frente y parte posterior de la cabeza. No nos convence su argumento.
Por otra parte, Alonso también alega que la compensación concedida por el Tribunal de Primera Instancia por concepto de daños no es cónsona con las indemnizaciones concedidas por este Tribunal y el Tribunal Supremo de Puerto Rico por daños similares. En apoyo de su alegación, Alonso cita la decisión del Tribunal Supremo en el caso de Colón González v. K-mart, 2001 J.T.S. 98, Opinión de 26 de junio de 2001, en el que ese Tribunal concedió a la demandante $60,000.00 por daños físicos y angustias mentales debido a un 4% de impedimento. El co-demandante apelante argumenta que “no ve en qué puede diferenciarse el impedimento que sufre el Ledo. Alonso al que sufre la Sra. Colón González,” y solicitó a este Tribunal que aumente la indemnización por concepto de impedimento físico a la cantidad de $78,000.00.
En cuanto a este punto, el Tribunal Supremo ha dicho que "no hay dos casos exactamente iguales; cada caso se distingue por sus propias y variadas circunstancias," Toro Aponte v. E.L.A., supra, a la página 478, citando a Rodríguez Cancel v. A.E.E., supra. Es por ello que aunque es aconsejable que los tribunales de instancia utilicen como guía o punto de partida las cuantías concedidas por el Tribunal Supremo en casos similares anteriores, la decisión emitida en un caso en específico en relación con esta materia no puede ser considerada como precedente obligatorio para otro caso, Baralt v. Báez, 78 D.P.R. 123, 127 (1955); Vda. de Silva v. Auxilio Mutuo, 100 D.P.R. 30, 34 (1971); Rodríguez Cancel v. A.E.E., supra, a la página 452; Quiñones López v. Manzano Pozas, supra, a la página 179. "La valorización de los daños responde a factores particulares y únicos que no se prestan a extrapolación indiscriminada entre un caso y otro." La compensación otorgada por los tribunales debe ser considerada conforme los hechos particulares de cada caso, Toro Aponte v. E.L.A., supra, a la página 478. Más aún, el Tribunal Supremo ha expresado que la cantidad concedida a un reclamante dependerá de varias circunstancias, entre éstas, la edad y el estado de salud del lesionado, Vda. de Silva v. Auxilio Mutuo, supra, a la página 34.
Por lo tanto, a la luz de la normativa antes expuesta, concluimos que el TPI no estaba obligado a tomar como obligatorio las cantidades otorgadas por los foros judiciales en casos anteriores, incluyendo el de Colón González v. K-mart, supra. En el presente caso, el tribunal analizó y ponderó los hechos particulares del mismo y conforme a éstos, otorgó la cantidad que como indemnización estimó justa y razonable. Por lo tanto, no vamos a intervenir con la valoración que de los daños hizo el TPI en este caso, ya que entendemos que la compensación otorgada a los co-demandantes no es ridiculamente baja.
Por todo lo anteriormente expresado, concluimos que los errores 3, 4, 5 y 6 no fueron cometidos.
VII
En lo que respecta al séptimo señalamiento de error presentado por Alonso en términos de que erró el tribunal apelado al no determinar como cuestión de derecho que los co-demandados apelados incurrieron en temeridad, entendemos que el mismo también es improcedente. Para fundamentar la alegada temeridad, el co-demandante apelante indica que los co-demandados se negaron a aceptar unas estipulaciones propuestas por él en el Informe de Conferencia con Antelación al Juicio, negaron la ocurrencia del incidente ocurrido, teniendo alegadamente a su alcance toda la información necesaria para admitir los hechos e intentaron establecer una controversia de identificación en el contrainterrogatorio.
La determinación del Tribunal de Primera Instancia acerca de la procedencia de honorarios de abogado por *918 temeridad, bajo las disposiciones de la Regla 44.1 (d) de Procedimiento Civil, 32 L.P.R.A. Apéndice III, Regla 44.1 (d), y su cuantía, es discrecional, CNA Casualty de Puerto Rico v. Torres Díaz, 141 D.P.R. 27, 43 (1996); Asociación de Condominos v. Trelles Reyes, 120 D.P.R. 574, 579 (1988), y en apelación, no se intervendrá con dicha determinación, a menos que constituya un abuso de discreción, CNA Casualty de Puerto Rico, supra, a la página 43; Montañez Cruz v. Metropolitan Cons. Corp., 87 D.P.R. 38, 40 (1962). Le corresponde a la parte recurrente demostrar la comisión del abuso de discreción por parte del tribunal sentenciador, CNA Casualty de Puerto Rico v. Torres Díaz, supra, a la página 44.
La acción que amerita la condena de honorarios de abogado es cualquiera que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o que produzca la necesidad de que otra parte incurra en gestiones evitables. Rivera v. Tiendas Pitusa, Inc., 148 D.P.R. 695, 702 (1999; Blás v. Hospital Guadalupe, 146 D.P.R. 267, 335 (1998); Oliveras, Inc. v. Universal Ins. Co., 141 D.P.R. 900, 936 (1996). Sin embargo, el simple hecho de que una parte haya perdido el caso, no da base para penalizarlo con honorarios de abogado a favor de la parte victoriosa. Raoca Plumbing v. Trans World, 114 D.P.R. 464, 472 (1983).
El Tribunal ha estudiado y analizado el presente caso y concluimos que la no imposición de honorarios de abogado encuentra apoyo en las presentes circunstancias. De este recurso no surge que los co-demandados apelados hayan actuado temerariamente. Además, las controversias suscitadas en el expediente y la contradicción en las versiones de las testigos, generaron posiciones encontradas entre las partes, las cuales requerían de la realización de una vista en su fondo. Por otro lado, la parte apelante tampoco demostró abuso de discreción por parte del tribunal apelado.
Por lo tanto, concluimos que no incidió el Tribunal de Primera Instancia en el error alegado.
VIII
En virtud de todo lo antes expuesto, CONFIRMAMOS la Sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2004 DTA 36
1. Surge de la prueba presentada en el juicio que la barra de Mango’s Café es en forma de "L" invertida.
2. Contrario a esta alegación, el cantinero en su testimonio indica que acostumbraba poner la olla en un fregadero ubicado debajo del tope de la barra, cerca del teléfono. Refiérase a la página 48 de la Exposición Narrativa Estipulada.
3. Según surge de la página 8 de la Sentencia del TPI en su segundo párrafo.
4. Según surge de la página 4 de la Demanda, a la página 4 del Apéndice.
5. Idem.

6. Idem.

7. El TPI determinó como un hecho probado que los peritos de las partes, el Dr. José Cario (parte demandante) y el Dr. Víctor Mojica (parte demandada), concluyeron que Alonso posee, a consecuencia de la agresión recibida, un 13% de incapacidad en sus funciones fisiológicas generales. El TPI valoró cada por ciento de incapacidad en $2,500.00 que multiplicado por 13 arroja dicho resultado. Según surge de la página 26 de la Sentencia, a la página 80 del Apéndice.
*919 8. Véase, además, Jiménez v. Pelegrina Espinet, 112 D.P.R. 700, 705-706 (1982); Salvá Matos v. A. Díaz Const. Corp., 95 D.P.R. 902, 906-908 (1968).
9. Véase, además, Cárdenas Maxán v. Rodríguez Rodríguez, supra, a la página 710; Sociedad de Gananciales v. Jerónimo Corp., supra, a la página 134.
10. Según surge de la página 7 de la Sentencia, a la página 61 del Apéndice.
11. En la página 53 de la Exposición Narrativa, el licenciado Valls le lee aí testigo Rafael Rivera Báez, cantinero de Mango’s, lo que éste dijo en su deposición, para que le indicara si coincidía con lo expresado ese día en juicio. El licenciado Valle le lee de la deposición, página 32, Enea 6, donde el testigo indicó que Alonso tenía un tono de voz "como hablan los borrachos, agresivo, gritando, jaquetón" y que también testificó que Alonso estaba borracho, a lo cual el testigo contestó que se reafirmaba en lo dicho.
12. Según surge de la página 87 de la transcripción de la vista.
13. Id., a la página 10 de la Sentencia del TPI, a la página 64 del Apéndice.
14. Corresponde a la suma de $32,500.00 por la incapacidad física más $15,000.00 por los dolores de cabeza y deterioro de la condición de psoriasis. Dicha cantidad incluye el 40% de negligencia atribuida al co-demandante apelante.
15. Refiérase a la página 19 del escrito de Apelación.