Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| COSME COLÓN, YADIRA REGUEIRA ÁLVAREZ Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Apelantes<br><br>v.<br><br>MÁXIMO SOLAR INDUSTRIES, INC. Y SUS ASEGURADORAS (A, B, C), DEMANDADO DESCONOCIDO Y SUS ASEGURADORAS (D, E, F)<br><br>Apelados | KLAN202300738 | *Apelación*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Civil Núm.: AG2020CV00169<br><br>(Sala 601)<br><br>Sobre:<br><br>Fraude, Dolo, Incumplimiento de Contrato, Daños y Perjuicios Contractuales |

Panel integrado por su presidenta, la Jueza Ortíz Flores, el Juez Rivera Torres y la Jueza Rivera Pérez.

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de noviembre de 2023.

Comparecen los apelantes, el Sr. Cosme Colón, la Sra. Regueira Álvarez y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, los esposos Cosme Regueira o parte apelante), y nos solicitan la revisión de la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (en adelante, TPI), el 18 de julio de 2023, notificada el 20 de julio de 2023. Mediante dicho dictamen, el TPI ordenó la resolución del contrato suscrito entre las partes, y ordenó la devolución de la totalidad de lo pagado por la parte apelante en un término no mayor de noventa (90) días. Además, el foro primario ordenó a Máximo Solar Industries, Inc. (en adelante, Máximo Solar o parte apelada) a remover todos los equipos instalados en la residencia, sin costo alguno, en el término anteriormente dispuesto. Por último, impuso la cantidad de $5,000.00 en concepto de honorarios de abogados por temeridad.

Número Identificador

SEN2023_____

Por los fundamentos que expondremos a continuación, se confirma la sentencia apelada.

**-I-**

El 9 de febrero de 2020, los esposos Cosme Regueira presentaron *Demanda* de fraude, dolo, incumplimiento de contrato, y daños y perjuicios contractuales en contra de Máximo Solar, sus Aseguradoras Desconocidas, así como contra demandados desconocidos y sus aseguradoras.[1] En síntesis, la parte apelante alego en su demanda que suscribió un contrato de obra y servicios con la parte apelada y que esta última se comprometió a instalarle un sistema de placas solares sobre el techo de su residencia para la adquisición de energía renovable y que como parte del contrato emitió un primer pago de $18,000.00 y un segundo pago de $19,426.00.[2] Además, arguyó la parte apelante en su demanda que Máximo Solar, incumplió sus obligaciones contractuales toda vez que el sistema de placas solares que éste instaló en su residencia nunca cumplió con los parámetros de capacidad de producción y almacenaje de energía establecidos en el contrato, causándoles daños especiales que consistieron en $6,318.25 por concepto de compra de alimentos y equipos electrónicos del hogar dañados; $8,000.00 por concepto de reparaciones a la piscina y terraza; $25,000.00 por concepto de perdida de venta del inmueble como resultado del problema de las placas solares no se había resuelto; y $60,000.00 en concepto de daños por depresión, insomnio, desesperanza, falta de apetito, irritación continua e inseguridad.[3]

El 15 de julio de 2020, Máximo Solar presentó su *Contestación* a la demanda en la cual negaron las causas de acción entabladas en su contra y presentaron sus defensas afirmativas.[4]

---

[1] Apéndice 1 de *Apelación Civil*, págs. 1-5.
[2] *Id.*
[3] *Id.*
[4] Apéndice 2 de *Apelación Civil*, págs. 6-18.

Luego de varios trámites procesales, el 6 de septiembre de 2022, las partes presentaron una *Moción Conjunta en Cumplimiento de Orden* a la cual se unió la prueba documental estipulada por ambas partes para el juicio.[5] Ese mismo día, las partes presentaron *Informe de Conferencia con Antelación a Juicio* en el cual también hicieron constar la prueba documental estipulada.[6]

Así las cosas, el juicio en su fondo se celebró el 3 de abril de 2023.[7] El TPI dictó *Sentencia*, el 18 de julio de 2023, notificada y archivada en autos el 20 de julio de 2023.[8] En su dictamen el foro primario realizó las determinaciones de hechos siguientes:

### DETERMINACIONES DE HECHOS

1. El 15 de mayo de 2017 las partes del epígrafe otorgaron un contrato de obras y servicios.

2. La parte demandante emitió un primer pago de $18,000.00 y posteriormente, un segundo pago de $19,426.00.

3. En el contrato suscrito por las partes, la parte demandada se comprometía a instalar un sistema de placas solares sobre el techo de la residencia del demandante para la adquisición de energía renovable. El contrato fue estipulado por las partes.

4. El sistema fue adquirido con el propósito de conectar tres aires acondicionados y un horno para realizar trabajos de artesanía.

5. La instalación del sistema fue realizada varios días antes del paso del Huracán Irma por Puerto Rico.

---

[5] Apéndice 3 de *Apelación Civil*, págs. 19-42. Esta orden surge de la *Minuta Enmendada* de la vista de 19 de agosto de 2022. Entrada Núm. 87 del expediente digital del Caso Núm. AG2020CV00169 en el Sistema Unificado de Manejo y Administración de Casos (en adelante, SUMAC). Los documentos estipulados fueron los siguientes: (1) tabla de gastos; (2) recibo de Sam´s Club; (3) recibo de Costco Wholesale;(4) Factura de A la Orden Discount; (5) Contrato de Randy´s Service; (6) recibo de Villa Appliance Services; (7) Contrato de Máximo Solar Industries; (8) *Curriculum Vitae* de Juan F. Charles (perito).
[6] Apéndice 4 de *Apelación Civil*, págs. 43-51.
[7] Apéndice 5 de *Apelación Civil*, págs. 52-59. Según consta en la minuta del juicio en su fondo celebrado el 3 de abril de 2023, la prueba documental estipulada por las partes quedo marcada de la siguiente manera: ***Exhibit I,*** Tabla de gastos Incurridos del 3 de febrero de 2020; ***Exhibit II,*** Recibo de Sam´s Club del 7 de diciembre de 2017; ***Exhibit III,*** Recibo de Costco del 30 de noviembre de 2018; ***Exhibit IV,*** Recibo de A la Orden Discount del 4 de junio de 2019; ***Exhibit V,*** Contrato-Recibo de Randy´s Pool Service del 25 de octubre de 2018; ***Exhibit VI,*** Recibo de Villa Appliance Services del 27 de noviembre de 2017; ***Exhibit VII,*** Contrato Máximo Solar suscrito por las partes; ***Exhibit VIII,*** Curriculum Vitae del Dr. Juan F. Charles y ***Exhibit IX,*** Informe pericial del Dr. Juan F. Charles.
[8] Véase: nota al calce 1.

6. Durante el Huracán Irma el sistema solamente brindó 4 horas de energía.

7. Luego del Huracán María, el sistema no estuvo en función, y la parte demandada, aun cuando se comprometió a evaluar el sistema, este no fue corregido.

8. El sistema, conforme al contrato suscrito por las partes, debía generar 16.24 kilowatts, lo que no sucedió, provocando que los equipos de la residencia no pudieran ser utilizados.

9. Aun cuando los técnicos Máximo Solar Industries, Inc., visitaron la residencia para reiniciar las baterías, éstas no funcionaron a la capacidad correcta.

10. Los aires acondicionados están en funcionamiento, pero no se pueden encender todos a la misma vez.

11. El perito de la parte demandada, Ing. Gerald Quintero, realizó una visita a la residencia de la parte demandante, para evaluar las baterías y los micro inversores de monitores.

12. Como parte de la inspección, surge que una batería no funcionaba y el área del [monitoreo] de los micro inversores estaba desconectado.

13. Los problemas técnicos del equipo eran responsabilidad de la parte demandada, pero ésta no brindó el servicio requerido, lo que provocó que los demandantes no tuvieran el servicio disponible.

El TPI en su dictamen ordenó la resolución del contrato suscrito entre las partes, y la devolución de la totalidad de lo pagado por la parte apelante en un término no mayor de noventa (90) días. El foro primario, además, ordenó a Máximo Solar remover todos los equipos instalados en la residencia, sin costo alguno, en el término anteriormente dispuesto. Por último, el TPI impuso la cantidad de $5,000.00 en concepto de honorarios de abogados por temeridad.

Inconforme, la parte aquí apelante, presentó ante el TPI *Moción al Amparo de la Regla 43 de Procedimiento Civil.*[9] En su moción de determinaciones de hechos adicionales solicitó que el TPI incluyera en su sentencia determinaciones de hechos adjudicando

---

[9] Apéndice 7 de *Apelación Civil,* págs. 66-68.

los gastos incurridos y daños sufridos por la cantidad de $14,318.25 de conformidad a la prueba documental estipulada y la prueba testifical desfilada.[10]  El 4 de agosto de 2023, el TPI declaró No Ha Lugar la moción en solicitud de determinaciones de hechos adicionales.[11]

Aún inconformes, el 21 de agosto de 2023, los esposos Cosme Regueira Álvarez acudieron ante nos mediante el recurso que nos ocupa. Señalaron la comisión de los siguientes errores:

> **Primer Error:** El Honorable Tribunal de Primera Instancia cometió el error de derecho al no otorgar a la apelante la cantidad de $14,318.25 en resarcimiento por los daños sufridos y probados mediante la prueba documental estipulada y la prueba testifical desfilada en corte abierta y nunca controvertida por la parte apelada.

> **Segundo Error:** El Honorable Tribunal de Primera Instancia erró y abusó de su discreción al no considerar conforme a derecho la prueba documental estipulada y la prueba testifical desfilada en corte abierta y nunca controvertida por la parte apelada.

Luego de varios trámites procesales apelativos, el 26 de septiembre de 2023, la parte apelante presentó su *Alegato en Oposición a Recurso de Apelación*.  El 16 de octubre de 2023, mediante *Moción Conjunta en Cumplimiento de Orden* ambas partes comparecieron y certificaron que la transcripción del juicio en su fondo celebrado el 3 de abril de 2023 era una copia fiel a la regrabación de los procesos; por lo cual quedó estipulada por las partes la reproducción de la prueba oral.  Así las cosas, se dictó *Resolución* concediéndole a las partes un término de cinco (5) días para que informaran si iban estar sometiendo alegatos suplementarios y que de no cumplir con el término ordenado se estaría dando por perfeccionado el recurso.  Cumplido el término

---

[10] *Íd.*
[11] Apéndice 8 de *Apelación Civil*, pág. 69.

dispuesto sin que las partes informaran que estarían presentado escritos suplementarios procedemos a resolver.

**-II-**

**-A-**

Es norma conocida en nuestro ordenamiento jurídico que, "ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia". *Ortiz Ortiz v. Medtronic.*, 209 DPR 759, 778 (2022), citando a *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). Ello implica que un tribunal apelativo debe abstenerse de intervenir con las determinaciones de hechos y la adjudicación de credibilidad que realizó el foro primario, evitando descartarlas, modificarlas o sustituirlas por su criterio, aun cuando en su evaluación particular hubiera emitido un juicio distinto. *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007); *Argüello v. Argüello,* 155 DPR 62, 78 (2001). El fundamento de esta norma, en cuanto a la prueba testifical, yace en que es el foro primario quien de ordinario se encuentra en mejor posición para aquilatarla, ya que es quien ve y oye a los testigos, pudiendo apreciar sus gestos, titubeos, contradicciones, dudas, vacilaciones y, por consiguiente, formar en su conciencia la convicción en cuanto a si dicen o no la verdad. *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31, 67-68 (2009). En contraste, los foros apelativos solo contamos con récords mudos e inexpresivos. *Trinidad v. Chade,* 153 DPR 280, 291 (2001). Esta norma, sin embargo, no es absoluta, pudiendo un apelante presentar prueba que demuestre que la apreciación realizada por el foro sentenciador no fue correcta o no está refrendada por la prueba presentada y admitida. *Serrano Muñoz v. Auxilio Mutuo, supra,* pág. 741. Por todo lo cual, se ha establecido la

regla fundamental en nuestro ordenamiento de que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza el Tribunal de Primera Instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad, o que incurrió en error manifiesto. *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 753 (2013). Véase la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2.

En cuanto a la prueba testifical, procede nuestra intervención con la apreciación de la prueba o la adjudicación de credibilidad de los testigos en aquellos casos en que, luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que conmueva nuestro sentido básico de justicia. *Pueblo v. Cabán Torres,* 117 DPR 645, 648 (1986). Por tanto, quien impugne una sentencia o resolución bajo estos parámetros deberá presentar evidencia sustancial que derrote la presunción de corrección que cobija la decisión del foro primario. Esto es, evidencia que en una mente razonable pueda aceptarse como adecuada para sostener una conclusión. *Vázquez Cintrón v. Banco Desarrollo,* 171 DPR 1, 25 (2007).

No obstante, esta norma de deferencia no alcanza la apreciación de la prueba documental o pericial realizada por el foro de primera instancia. En ese sentido, la jurisprudencia del Tribunal Supremo ha sido consistente en que los foros revisores nos encontramos en igualdad de condiciones con el foro sentenciador para evaluar y apreciar la prueba documental admitida en evidencia. *Albino v. Ángel Martínez, Inc.,* 171 DPR 457, 487 (2007). *Díaz García v. Aponte Aponte,* 125 DPR 1, 13-14 (1989).

Dentro de los diferentes tipos de estipulaciones que pueden

llegar las partes se encuentran las de materias procesales.[12] Por tanto, uno de los métodos de admisibilidad de la prueba puede ser por estipulación de las partes. *P.R. Glass Corp. v. Tribunal Superior*, 103 DPR 223, 230 (1975). La Regla 901 B (8) de Evidencia, 32 LPRA Ap. VI, R. 901 B (8), permite la autenticación de evidencia mediante admisión. Esta norma expresamente dispone que: "[u]n escrito, u otro material, puede ser autenticado mediante evidencia de que la parte contra quien se ofrece admitió su autenticidad en cualquier momento, o mediante evidencia de que ha sido aceptado como auténtico por la parte contra la cual se ofrece."

En cuanto a la prueba suficiente para prevalecer en una acción, la Regla 110 de Evidencia, 32 LPRA Ap. VI, R. 110, establece algunos parámetros que rigen el proceso de apreciación de la prueba. En los pleitos civiles, el *quantum* requerido es el de preponderancia de la prueba, a base de criterios de probabilidad. Regla 110(F) de Evidencia, *supra.* La obligación de presentar evidencia recae primeramente sobre la parte que sostiene la afirmativa en el asunto en controversia. El juzgador de los hechos no tiene la obligación de decidir de acuerdo con las declaraciones de cualquier cantidad de testigos que no le convenzan contra un número menor u otra evidencia que le resulte más convincente. Reglas 110(B) y (E) de Evidencia, *supra.* En cuanto al grado de prueba requerido, la Regla 110(C) de Evidencia, *supra,* dispone que, para establecer un hecho, no se exige un grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza. Además, la evidencia directa de un único testigo que merezca entero crédito al juzgador es prueba suficiente para establecer cualquier

---

[12] En nuestro estado de derecho se han reconocido tres clases de estipulaciones: (1) las que constituyen admisiones de hechos y dispensan del requisito de probarlos; (2) las que reconocen derechos y tienen el alcance de una adjudicación; (3) las que proponen determinado curso de acción, es decir, que se celebre una conferencia con antelación al juicio, que se someta una cuestión a un comisionado especial, o para que se admitan determinadas pruebas. *Mun. de San Juan v. Prof. Research*, 171 DPR 219 (2007); P.R. *Glass Corp. v. Tribunal Superior*, supra.

hecho, salvo que otra cosa se disponga por ley. Regla 110(D) de Evidencia, *supra.* Es por ello, por lo que la normativa de derecho probatorio no reconoce exigencia alguna de corroboración de cierto tipo de testimonio. Esto es así, aunque no se trate de un testimonio "perfecto" o libre de contradicciones. *Pueblo v. Santiago et al.*, 176 DPR 133, 147 (2009). En ese caso, corresponderá al juzgador aquilatar su valor probatorio y credibilidad.

**-B-**

En nuestro ordenamiento jurídico rige el principio de la libertad de contratación o autonomía de la voluntad, según el cual las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que las mismas no sean contrarias a las leyes, a la moral ni al orden público. Artículo 1207 del Código Civil de 1930, 31 LPRA ante sec. 3372;[13] *Feliciano v. Luxury Hotels Int'l*, 210 DPR 712 (2022); *Álvarez v. Rivera*, 165 DPR 1, 17 (2005); *Irizarry López v. García Cámara*, 155 DPR 713 (2001); *Trinidad v. Chade*, 153 DPR 280 (2001.

A partir del perfeccionamiento de un contrato, las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven del mismo, ello conforme a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil, 31 LPRA ante sec. 3375; *Trinidad v. Chade*, supra. De esta manera, cuando un contrato es legal, válido y carente de vicios del consentimiento, el mismo constituye la ley entre las partes y debe cumplirse a tenor de este. Artículo 1044 del Código Civil, 31 LPRA ante sec. 2994; *Feliciano v. Luxury Hotels Int'l of P.R. Inc.*, supra; *Constructora Bauzá, Inc. v. García López*; 129 DPR 579, 593 (1991); *Cervecería Corona v. Commonwealth Ins. Co.*, 115 DPR 345 (1984). Es por ello,

---

[13] El *"Código Civil de Puerto Rico"*, Edición de 1930, fue derogado y sustituido por la Ley Núm. 55-2020, según emendada, conocida como *"Código Civil de Puerto Rico" de 2020*, 31 LPRA sec. 5311 *et seq.* Los hechos que originan la presente controversia tomaron lugar durante la vigencia del código anterior, por lo cual esta es la ley aplicable.

que el Artículo 1054 del Código Civil, 31 LPRA ante sec. 3018, **sujeta a aquellos que de alguna manera contravengan sus obligaciones a la indemnización de los daños y perjuicios causados.** Bajo dicho supuesto, todo incumplimiento contractual dará lugar a un resarcimiento. *Álvarez v. Rivera*, supra, pág. 18.

Las acciones *ex contractu* se basan en el quebrantamiento de un deber que surge de un contrato expreso o implícito, y tienen por objeto que se cumplan las promesas sobre las cuales las partes otorgaron su consentimiento. *Íd.*; *Ramos v. Orientalist Rattan Furnt., Inc.*, 130 DPR 712 (1992); *Ocasio Juarbe v. Eastern Airlines, Inc.*, 125 DPR 410 (1990); *Santiago Nieves v. A.C.A.A.*, 119 DPR 711, (1987). Por tanto, para que proceda esta acción tiene que haber habido un acuerdo de voluntades que genere una obligación, situación o estado de derecho resultante de un convenio y que haya creado unas expectativas a base de las cuales actuaron las partes. *Álvarez v. Rivera*, supra, pág. 18; *Trinidad v. Chade*, ante.

En el caso de las obligaciones recíprocas, el Artículo 1077 del Código Civil, 31 LPRA ante sec. 3052, dispone lo siguiente:

> "La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere con lo que le incumbe.
>
> **El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses** en ambos casos. También podrá pedir la resolución, aun después de haber optado por el cumplimiento, cuando éste resultare imposible." (Énfasis suplido.)

De la referida disposición estatutaria surge que, ante un incumplimiento de una obligación bilateral, el perjudicado puede optar entre exigir el cumplimiento de la obligación o su resolución, y en ambos casos, si tal incumplimiento ha tenido repercusiones en su patrimonio de forma desfavorable, puede reclamar el resarcimiento por los daños ocasionados. *Álvarez v. Rivera*, supra, pág. 19.

Por tanto, únicamente si el cumplimiento parcial o defectuoso implica la frustración de la finalidad contractual para la parte perjudicada, procederá entonces, la resolución del contrato. *Íd.*, págs. 19-20. En los demás casos, en que la prestación se ha efectuado parcialmente o resulta defectuosa, será procedente exigir el cumplimiento total o libre de defectos y, en los casos en que proceda, una reducción proporcional del precio. *Íd.*

Por otra parte, el Artículo 1077 del Código Civil, *supra*, reconoce que, ante el incumplimiento de una obligación recíproca, la parte perjudicada puede exigir su cumplimiento. En decir, si el que incurre en incumplimiento exige la satisfacción de la prestación debida, la otra parte puede oponer la defensa del contrato incumplido. *Álvarez v. Rivera*, supra, pág. 20; *Mora Dev. Corp. v. Sandín*, 118 DPR 733, 742 (1987). Este principio general en materia de contratos recíprocos es conocido en la doctrina civilista como la excepción de contrato no cumplido (*exceptio non adimpleti contractus*). *Íd.* Esta excepción de contrato no cumplido se fundamenta en la regla de la ejecución simultánea de las obligaciones recíprocas. Artículo 1053 del Código Civil, 31 LPRA sec. 3017; *Íd.*, citando a Puig Brutau, *op. cit.*, pág. 115.

Existe una modalidad de la excepción de contrato no cumplido, que la jurisprudencia y la doctrina civilista ha reconocido como la "excepción de contrato no cumplido adecuadamente" o "excepción de falta de cumplimiento regular", denominada en latín como la *exceptio non rite adimpleti contractus*. *Íd.*, págs. 20-21. Esta excepción aplica en el caso que una de las partes haya cumplido la prestación parcial o defectuosamente sin ajustarse debidamente a lo que exige el vínculo obligatorio. *Íd.*

**-C-**

El Artículo 1434 regula los contratos de obras y servicios, en el cual una de las partes se obliga a ejecutar una obra, o a prestar

a la otra un servicio por precio cierto. 31 LPRA sec. 4013. El contrato de arrendamiento de obra se define "como esencialmente uno de trabajo, mediante el cual una de las partes se encarga de hacer una cosa para la otra, mediante un precio convenido entre ello." *Master Concrete Corp. v. Fraya, S.E.*, 152 DPR 616, 623-624 (2000). Sin embargo, no existe duda de que el contrato de obra es uno de carácter consensual, bilateral y oneroso, cuyos elementos característicos son la obra por realizarse y el precio. *Id.*; *Constructora Bauzá, Inc. v. García López*, supra, pág. 592.

El dueño de la obra tiene la obligación fundamental de pagar el precio de ésta en la forma, en la cuantía y en el tiempo convenido. *Master Concrete Corp. v. Fraya, S.E.*, supra. (citando a M. Albaladejo).[14] "El contratista viene obligado a ejecutar la obra conforme a lo convenido en el contrato, a las reglas del arte de la construcción y a los usos o reglas profesionales." *Id.* Si el contratista incumple con su deber, el dueño tiene derecho a pedir la resolución del contrato, aun hecha la obra, si resulta ser tan imperfecta que el dueño se ve impedido de usarla para el fin perseguido. *Id.*

Una vez perfeccionado un contrato de arrendamiento de obra -como en todo tipo de contrato- las partes están obligadas por lo expresamente pactado y, de incurrir en dolo, negligencia o morosidad en el cumplimiento de sus obligaciones, responde por los daños y perjuicios causados. *Id.*; Artículos 1210 y 1054 del Código Civil de 1930, 31 LPRA sec. 3375 y 3018.

**-D-**

El Artículo 1802 del Código Civil, 31 LPRA sec. 5141, dispone que: "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado [...]". En estos casos, para probar una causa de acción por daños y

---

[14] M. Albaladejo, Derecho Civil, 8 va ed., Barcelona, Ed. Bosch, 1989, pág. 49.

perjuicios, el promovente deberá demostrar, mediante preponderancia de la prueba: (1) que se ha sufrido un daño; (2) por medio de un acto u omisión culposo o negligente; y (3) que existe un nexo causal entre la acción u omisión de la parte y el daño sufrido. *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 976 (2021); *López v. Porrata Doria*, 169 DPR 135, 150 (2006); *García v. E.L.A.,* 163 D.P.R. 800, 809 (2005). Así pues, el que un demandante ostente el derecho a recibir indemnización por un alegado daño presupone la existencia de un nexo causal entre el daño y el factor que lo origina. Es decir, sólo corresponde indemnizar los daños que son consecuencia del hecho que obliga a la indemnización. *Rivera Jiménez v. Garrido & Co., Inc.,* 134 DPR 840, 851-852 (1993).

Se ha establecido que la culpa o negligencia consiste en "la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *Pérez et al. v. Lares Medical et al.*, supra; *López v. Porrata Doria*, supra. Cuando se alegue haber sufrido daños como consecuencia de la negligencia de la parte demandada, el peso de la prueba respecto a la alegada negligencia le corresponde a la parte demandante. *Colón y otros v. Kmart y otros,* 154 DPR 510, 521 (2001); *Matos v. Adm. Servs. Médicos de P.R.,* 118 DPR 567, 569 (1987).

En Puerto Rico rige la teoría de la causalidad adecuada para determinar el nexo causal necesario para adjudicar responsabilidad civil. La causa adecuada es la que, según la experiencia general, ordinariamente produce los daños imputados. No es otra cosa que el evento o acto que con mayor probabilidad causó el daño por el que se reclama indemnización. *Miranda v. E.L.A.*, 137 DPR 700, 707 (1994); *Negrón García v. Noriega Ortiz,* 117 DPR 570, 575 (1984). Así pues, un daño parece ser el resultado natural y probable de un acto

negligente si después del suceso, y mirándolo retroactivamente el acto que se alega ser negligente, tal daño aparece como la consecuencia razonable y ordinaria del acto. *Montalvo v. Cruz*, 144 DPR 748, 756-757 (1998), citando a *Torres Trumbull v. Pesquera*, 97 DPR 338, 343-344 (1969).

En Puerto Rico, el ámbito de la responsabilidad civil extracontractual basada en la culpa o negligencia está regida por el Art. 1802 del Código Civil, *supra*. Dicho artículo establece que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." Por consiguiente, para que exista responsabilidad por los daños al amparo del referido estatuto legal, es necesario que concurran los siguientes requisitos: 1) que haya un daño sufrido; 2) nexo causal entre el daño y la acción u omisión de otra persona; y 3) que la acción u omisión sea culposa o negligente. *Id.*

**-III-**

La parte apelante alega en síntesis en sus dos (2) señalamientos de errores que erró el TPI en derecho y abusó de su discreción al no otorgarle la cantidad de $14,318.25 en resarcimiento por los daños sufridos y probados al no considerar la prueba documental estipulada y la prueba testifical desfilada en corte abierta y nunca controvertida por la parte apelada. Por estar íntimamente relacionados los errores señalados procederemos a discutirlos en conjunto. Veamos.

En específico, la parte aquí apelante arguye que la prueba documental que estableció los daños causados por la parte apelada se estipuló por ambas partes, y que no hubo controversia o prueba conflictiva en cuanto a éstos. Además, alega la parte apelante que la prueba testifical en el juicio en su fondo versó sobre la prueba documental estipulada y en específico sobre la

tabla de gastos incurridos de la cual surgen los gastos reclamados ascendentes a $14,318.25.

Además, la parte apelante alega que en virtud de lo dispuesto en el Artículo 1077 del Código Civil de 1930, *supra*, el cual dispone que, ante el incumplimiento de una obligación bilateral como en el caso del contrato de obra objeto de controversia, el perjudicado puede optar entre exigir el cumplimiento de la obligación o su resolución, y en ambos casos, si tal incumplimiento ha tenido repercusiones en su patrimonio de forma desfavorable, puede reclamar el resarcimiento por los daños ocasionados.

Por su parte, Máximo Solar arguye que en el caso de autos la parte aquí apelante no estableció mediante prueba testimonial que los gastos ascendentes a $14,318.25 fueron a causa de sus actuaciones, ni resultado de su acción o negligencia. Además, esgrimió que la parte apelante no demostró y testificó sobre el nexo causal entre el incumplimiento de contrato y los alegados daños causados. Respecto a la estipulación de la prueba documental que se hizo constar en el *Informe de Conferencia con Antelación a Juicio*, sobre los gastos que en el juicio fue marcado como *Exhibit I*, argumenta la parte apelada que esto se limitó al proceso de autenticación. Por último, arguye la parte apelada que lo estipulado en el *Informe de Conferencia con Antelación a Juicio* no implica una estipulación de hechos entre el nexo causal de lo estipulado, ni una la admisión de hecho de que la prueba documental era cierta y que los gastos habían sido incurridos como consecuencia de los daños directos, si no, la existencia del documento en el trámite procesal a los fines de simplicidad.

Conforme a lo alegado por la parte apelada es importante puntualizar que la prueba documental estipulada y marcada como *Exhibit I* sobre los gastos incurridos por la parte apelante tuvo el efecto de relevar a la parte apelante del proceso de autenticación requerido en virtud de la Regla 901 de Evidencia, *supra*. Sin embrago, el que una parte estipule la autenticidad de prueba documental no se puede confundir con la estipulación de hechos probados. La primera releva del proceso de autenticación de evidencia como condición previa a su admisibilidad, la segunda releva a la parte de probar un hecho. En el caso de autos las partes claramente establecieron en el *Informe de Conferencia con Antelación a Juicio* las estipulaciones de la prueba documental y estipulaciones de hechos que ninguna versa sobre los gastos y daños reclamados.[15] La estipulación de la prueba documental por la parte apelada solo tuvo el efecto de procesalmente estipular antes del juicio la autenticación de los documentos más no tuvo el efecto de probar su veracidad y conexión causal para la reclamación de las cuantías.

De la evaluación de la transcripción de la prueba oral del *Juicio en su Fondo* celebrado el 3 de abril de 2023, en específico el testimonio de la Sra. Regueira Álvarez, no surge que haya declarado una vez su representante legal le pregunta sobre el *Exhibit I* estipulado por las partes, sobre los alegados gastos y daños sufridos y su nexo causal con relación a las acciones u omisiones de Máximo Solar respecto al contrato de obra y servicio objeto de la

---

[15] Véase nota al calce 6. En el *Informe de Conferencia con Antelación a Juicio* los hechos estipulados fueron los siguientes:
III. Estipulación de Hechos por ambas Partes
1. El pasado 15 de mayo de 2017 las partes de epígrafe celebraron un contrato de obras y servicios.
2. La parte demandante emitió un primer pago de $18,000.00 y posteriormente un segundo pago de $19,426.00.
3. Las dos baterías de reemplazo no han sido instaladas aún según la recomendación de *Tesla*.

controversia.[16] Como es conocido, para probar una causa de acción por daños y perjuicios, el promovente deberá demostrar, mediante preponderancia de la prueba: (1) que se ha sufrido un daño; (2) por medio de un acto u omisión culposo o negligente; y (3) que existe un nexo causal entre la acción u omisión de la parte y el daño sufrido. Artículo 1802 del Código Civil, supra. En el caso de referencia, esto no ocurrió en el juicio en su fondo, la prueba presenta sobre este aspecto por la parte apelante solamente se limitó a preguntar que representaba la tabla presentada en evidencia por estipulación de las partes a lo cual la Sra. Regueira Álvarez contestó "alguno de los daños más grandes que tuvimos cuando ... por los problemas de, de la electricidad."[17] Además, declaró sobre un tope de la estufa que se dañó y tuvieron que cambiarlo.[18] Por último, la Sra. Regueira Álvarez declaró sobre una alegada venta de la casa que perdió por que "las placas solares no estaban funcionando. Y eso era como una ... un *highlight* para vender la casa."[19] La parte apelante alega que estos daños ocurrieron, así como los desglosados en el *Exhibit I* sin que se pormenorizar las razones y nexo causal por el incumplimiento de Máximo Solar con el contrato de obra y servicio suscrito entre las partes.

A la parte apelada le correspondía probar el nexo causal entre cada uno de los daños del acto culposo o negligente alegado. Como correctamente alega Máximo Solar la parte apelante falló en explicar respecto a los *Exhibits II, III, IV, V, VI y VII* en el juicio en su fondo en qué consistían los alegados daños con relación la acción de culpa o negligencia de Máximo Solar. En ausencia de error manifiesto, perjuicio, parcialidad o pasión, no intervendremos con la apreciación de la prueba y las determinaciones de hechos

---

[16] Trascripción de la Prueba Oral (en adelante, TPO), a las págs.129-133, 155-158.
[17] TPO, a la pág. 129.
[18] TPO, a la pág. 129-130.
[19] TPO, a la pág. 133.

formuladas por el foro primario. Por tanto, los alegados errores no fueron cometidos y no corresponde en derecho conceder los daños alegados.

### -IV-

Por los fundamentos antes expuestos, se confirma la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones